## SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. WATTS.

### (Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

### No. 102.

1. PARTIES TO ACTIONS—SUBROGATION.
   Where the owner of property, which has been destroyed by fire through another's negligence, has been paid a part of his loss by an insurer, who thereby becomes subrogated to the remedies of the assured, an action to recover from the wrongdoer the value of the property destroyed is properly brought in the name of the assured alone, and the insurer is neither a necessary nor a proper party to such action. 66 Fed. 453, affirmed.

2. EVIDENCE—CROSS-EXAMINATION—CONTRADICTING WITNESS.
   W.'s house was destroyed by fire shortly after some repairs had been made to a telephone wire therein, by one R., a servant of defendant, who used, in making such repairs, a hot soldering iron. It was alleged that the fire was caused by R.'s negligently setting fire to woodwork near the spot where the repairs were made. Upon the trial of an action by W. against defendant, R. testified that he had not scorched the woodwork; that he had gone to W.'s house from that of one S., where he had made similar repairs; that he had not scorched the woodwork at S.'s house; and that the repairs at W.'s had been made in the same way as at S.'s. Held, that it was competent, for the purpose of testing the accuracy of R.'s statements, to cross-examine him as to the manner in which he had done the work at S.'s house, and to show by S. that in fact R. had scorched the woodwork at his house. 66 Fed. 453, affirmed.

3. CONTRIBUTORY NEGLIGENCE.
   It was not contributory negligence that W. had inflammable material stored in another part of his house, not immediately adjacent to the place where R. was at work, there being nothing to show that such material had anything to do with the fire, and the jury finding that the fire was caused by R.'s negligence.

4. CHARGING JURY—USE OF LANGUAGE SUGGESTED BY COUNSEL.
   A judge is not bound to adopt the language suggested by counsel in asking instructions to the jury, and where the jury has been instructed, as to certain matters in issue, that they must "find from the evidence" certain facts, in order to give a verdict, it is not error to substitute this language for a direction that the jury must be "satisfied and convinced by the evidence" as to certain other facts, in an instruction requested by counsel. 66 Fed. 453, affirmed.

5. SAME—PROBABILITIES.
   It is not error to refuse to instruct the jury, in an action for negligence, that, if there are other theories of the cause of the injury as probable as the one on which the plaintiff bases his claim, the jury must find for the defendant, when the jury has already been instructed that, even if they find the plaintiff's theory the most probable, they must be satisfied that it is true in order to give a verdict for the plaintiff; and had been instructed that the burden was on the plaintiff to prove negligence, and that the defendant was presumed to be free from negligence. 66 Fed. 453, affirmed.

In Error to the Circuit Court of the United States for the District of West Virginia.

This was an action by C. C. Watts against the Southern Bell Telephone & Telegraph Company to recover damages for negligence. Upon the trial in the circuit court, judgment was given for the plaintiff. 66 Fed. 453. Defendant brings error.

This was an action of trespass on the case brought by Watts, a citizen of West Virginia, against the Southern Bell Telephone & Telegraph Company, a citizen of the state of New York, to recover $9,000, the value of a dwelling and its contents destroyed by a fire caused, as was alleged, by the negligence of the telephone company. The plaintiff offered evidence to prove that the defendant company sent its workmen to plaintiff's dwelling about half-past 11 on the morning of the 7th of February, 1894, to put in a return wire, and connect it with a telephone instrument which the company had, under a contract, placed in the library room of his house for his use, and that about an hour after the workmen left the house it was discovered to be on fire. The plaintiff offered testimony to prove that the defendant's workmen introduced the wire by boring a hole in an upper corner of the casing of a bay window of the library room; that the cavity of the casing extended below the floor to the sill of the house; that the wire so introduced had been soldered to a short wire on the telephone instrument; and that two other wires were at the same time and near the same place soldered with a hot soldering iron heated to a cherry heat. Testimony was produced to show that the house had been built about seven years, and that at the bottom of the casing shavings had been left by the carpenters who built it, and the contention of the plaintiff was that fire had been communicated through the holes in the casing, and had set fire to cobwebs or some inflammable substance inside, and had dropped down to the shavings in the bottom of the casing below the floor of the room. The plaintiff's testimony tended to prove that the family left the library when the workmen came, and were afterwards for some time eating dinner in a room across the hall on the other side of the house; that a noise was heard which startled them, and upon going into the hall it was found full of smoke, and smoke was seen coming into the bay window of the library, and running around the house the family and servants saw fire under the library bay window immediately under the telephone instrument, and smoke and blaze issuing from the iron ventilator underneath, and from the weatherboarding over and above the window, and that this was the first place where the fire showed itself. The plaintiff also offered evidence to prove that such a heated iron as the workmen used, if placed in contact with seasoned wood of the kind the window casing was made of, would cause a blaze or spark of fire to pass through a hole in the wood, and ignite any inflammable substance inside. The plaintiff gave in evidence other facts and circumstances tending to prove that the fire which destroyed his house was caused by the careless use of a heated soldering iron by defendant's workmen, and that there was no other cause for it.

The defendant produced a witness, Rauch, the workman who did the soldering, who testified that there was no new hole bored to insert the new wire, but a small quarter-inch hole already there was used; that the soldering iron was not heated to a red heat, but only sufficiently to melt the solder; and Rauch testified that in making the connections he soldered three wires, but did not bring the iron in contact with the casing or scorch it, and that the iron was immediately passed out of the window to a workman on the outside, and carried away; that after the soldering he bent the wires with his fingers, and noticed nothing unusual. Testimony of the plaintiff's witnesses showed that in the cellar, in a part partitioned off and not under the library room, but adjoining it, there was a considerable quantity of dried leaves, but that under the library there was nothing but some vegetables.

The defendant offered testimony to show that such an iron would not ignite wood, and that fire could not be communicated in that way, and produced a board before the jury, and the witness Rauch bored holes through it, and put a wire through it, and soldered it, to illustrate this contention. The witness Rauch, being cross-examined by the plaintiff, testified that he did not know of a case in which, in soldering telephone wires, he had ever burned the wood, and did not think he could have done so, and did not think a careful man would burn the wood, and that he had done the soldering at plaintiff's house in the same way he had done it at Sullivan's. The plaintiff then, in rebuttal, produced the witness Sullivan, who testified that in putting in the return wire at his store that same morning the workmen had bored three new three eighths-inch holes, and after this fire his attention was called to these holes, and he saw that where the soldering had been done there

were on the wood two scorched or burned places, each about one inch wide, one about two and one-half inches long, and the other about one and one-half or two inches long, one above and the other below one of the holes. The defendant objected to the evidence of the witness Rauch and the witness Sullivan, and excepted to the ruling of the court admitting their testimony as to the manner of putting in the return wire which had been put in at Sullivan's store just before Rauch went to plaintiff's house, and to the evidence of the scorching or burning of the window frame at Sullivan's store, as irrelevant and impertinent to the issue on this case.

The defendant, before the jury was sworn, filed a plea to the jurisdiction, alleging that the plaintiff at the time of fire was insured in two foreign insurance companies and a Pennsylvania company, and had been paid insurance amounting to $4,500, and that the said companies were subrogated to the plaintiff's right of action in this case, and, as the said companies were not citizens of West Virginia and the plaintiff was a citizen of that state, the court ought not to take cognizance of the case.    To this plea the plaintiff demurred, and the court sustained the demurrer, and ordered the plea stricken out. The defendant, having excepted to this ruling, then filed the general issue plea of not guilty.

The defendant prayed for eight instructions to the jury, as follows: "No. 1. (Granted.) The court instructs the jury that the defendant, by its agents, servants, and employés, had lawful right to go upon the premises and into the dwelling of the plaintiff, at reasonable times and in a reasonable manner, to make necessary changes and repairs in defendant's telephone line in said dwelling.    No. 2. (Granted.) The court instructs the jury that the presumption is that the work done by the defendant in and about plaintiff's dwelling, February 7, 1894, in the line of their duty, was done in a proper and skillful manner; and before a verdict can be found for the plaintiff the jury must find from the evidence that said work was done in an unskillful and negligent manner, which resulted in the burning of the plaintiff's house.    No. 3. (Refused.)  The court instructs the jury that if they find from the evidence that there are other theories of the origin of the fire that consumed the plaintiff's house, equally as probable as the one upon which the plaintiff bases his case, then the jury must find for the defendant.    No. 4. (Granted.) The court instructs the jury that, before they can find a verdict for the plaintiff in this case, they must find from the evidence that the fire which consumed plaintiff's house originated from the careless and negligent use of a soldering iron in joining wires on defendant's line in plaintiff's house by defendant's servants. No. 5. (Refused.) The court instructs the jury that if they find from the evidence that at the time plaintiff's house was burned he had dry leaves from four to six feet deep stored in his cellar; that said cellar had an open door leading out therefrom; and that there was a seven-inch thimble in a chimney flue in same room that contained said leaves,—then it is a question for the jury whether such action on the part of the plaintiff does not constitute such contributory negligence as to prevent any recovery by him in this case.  No. 6. (Granted.)  The court instructs the jury that, if they find that the evidence proves merely that a probability exists that the burning of the plaintiff's property was caused by the negligence of the defendant's servants or agents, that will not authorize them to find a verdict for the plaintiff, but that the burden is on the plaintiff to prove that such burning was the result of the negligence of the defendant, its servants or agents. No. 7. (Refused, but granted as amended by the court.) The court instructs the jury that, in order to find a verdict for the plaintiff, they must be satisfied and convinced by the evidence that the fire was caused by the negligence of the defendant, or its agents or servants, in soldering the telephone wire in plaintiff's house, and that they will not be justified in finding for the plaintiff simply because they may find that the evidence renders it merely probable that said fire was so caused.  No. 8. (Refused, but granted as amended by the court.) The court instructs the jury that even if they find from the evidence that the theory advanced by the plaintiff, and stated in the declaration, as to the origin of the fire, is more probable than any theory advanced by the defendant as to the origin of said fire, still they will not be justified in finding for the plaintiff, unless they are convinced by the evidence that said theory of the plaintiff is the true one as to the origin of the fire."  The court gave in-

structions 1, 2, 4, and 6, as asked for, and refused to give instructions Nos. 3 and 5, and, in lieu of instructions Nos. 7 and 8 as asked for, gave Nos. 7 and 8 as modified. "No. 7. (Granted as modified.) The court instructs the jury that, in order to find a verdict for the plaintiff, they must find from the evidence that the fire was caused by the negligence of the defendant or its agents or servants in soldering the telephone wire in plaintiff's house, and that they will not be justified in finding for the plaintiff simply because they may find that the evidence renders it merely probable that said fire was so caused. No. 8. (Granted as modified.) The court instructs the jury that even if they find from the evidence that the theory advanced by the plaintiff, and stated in the declaration, as to the origin of the fire, is more probable than any theory advanced by the defendant as to the origin of said fire, still they will not be justified in finding for the plaintiff, unless they find from the evidence that said theory of the plaintiff is the true one as to the origin of the said fire." The defendant excepted to the refusal of instructions Nos. 3 and 5, and to the modification of Nos. 7 and 8, and also excepted to the following portions of the court's oral charge to the jury: First. "The evidence shows, if it shows anything, by some eight or ten witnesses, that the fire was at a certain point in the house. There is no evidence in the case, that I am aware of, that tends to show that this fire commenced at any other place than under the library floor in that house,"—the defendant claiming that there was evidence tending to show that the fire commenced in the cellar room, under the room known as "Mrs. Watts' Room," in the rear of the library, and that the portion of said charge above quoted was therefore improper. Second. The defendant also excepted to those portions of said charge which contain the following language: (a) "If the plaintiff shows, by a preponderance of the evidence, that his house was burned by the carelessness and negligence of the defendant, then he is entitled to a verdict, if the preponderance of evidence convinces you of that fact." (b) "If the circumstantial evidence delivered before you shows that the house of the plaintiff was destroyed or burned down, and that the destruction and burning of the house was, by reason of the negligence of the defendant's agents or employés, working at and repairing its telephone, attached to and connected with the house of the plaintiff, as claimed, you should find for the plaintiff." (c) "If the circumstantial facts detailed and proven before you lead your minds to the conclusion that the house of the plaintiff was destroyed and burned down, and that the firing and burning of the house was the result of the negligence of the defendant's agents or employés in soldering its wire while working at or repairing its telephone, attached to and connected with the house of the plaintiff, you should find for the plaintiff." It appears from the court's oral charge, made part of the bill of exceptions and printed in the record, that, in connection with that portion of the charge first above excepted to, the court said to the jury: "If there is other evidence in conflict with this, of course you must consider it, and determine the case upon the weight of all the evidence. If there has been any evidence given showing that the fire did not commence in the room under the library or in the library, or in or about the floor or the place where it is claimed to have commenced, you must consider it, and give it such weight as you think it should have." The verdict and judgment was in favor of the plaintiff for $9,000, and the defendant brings error on the foregoing exceptions.

Flournoy & Price and Robert W. Stiles (George E. Price, of counsel), for plaintiff in error.

Ikey Johnson and J. F. Brown, for defendant in error.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

MORRIS, District Judge (after stating the facts). The demurrer to defendant's plea to the jurisdiction, which was sustained by the court, raises the question whether Watts could, in his own name and alone, institute an action at law to recover the full value of the property alleged to have been destroyed by the

defendant's negligence, after having been paid by the insurers about one-half his loss. It is contended that as the insurers were subrogated to the extent of their payments, and were entitled to be repaid if Watts recovered the whole loss from the defendant, they were necessary plaintiffs in the action, and if made plaintiffs the circuit court would be without jurisdiction, as then all the plaintiffs would not be citizens of the state in which the suit was brought. Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303. This contention cannot be maintained. It is true that the payment by the insurer works an equitable assignment of the assured's claim against the wrongdoer, but the wrongful act is indivisible, and gives rise to but one cause of action. The insurer is subrogated only to the remedies of the assured, and the rule is well settled that the suit is properly brought in the name of the person whose property has been destroyed. If he recovers a sum which, with the amount he has received from the insurers, is more than his whole loss, the excess belongs to the insurers, and he receives it as trustee for them. The wrongdoer is bound to respond in damages for the whole loss to the owner of the property, and how the money recovered is to be distributed does not concern him. Aetna Ins. Co. v. Hannibal, etc., R. Co., 3 Dill. 1, Fed. Cas. No. 96; Hart v. Railroad Co., 13 Metc. (Mass.) 99; Chicago, etc., R. Co. v. Pullman South. Car Co., 139 U. S. 79–86, 11 Sup. Ct. 490; Railway Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566; Sheld. Subr. §§ 230, 231. In an action at common law the right of the insurer is properly asserted in the name of the assured. Phoenix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 321, 6 Sup. Ct. 750, 1176.

The statute of West Virginia, providing that the assignee of any bond, note, account, or writing, not negotiable, may maintain thereupon any action in his own name, without the addition of "assignee," which the original obligee or payee might have brought, has no application to a case of subrogation, where the payment by the insurer is only a partial indemnity.

The defendant's exception to the admission of testimony of the witness Rauch and the witness Sullivan we do not think well taken. Rauch was defendant's witness; the man employed by it who soldered the wire at plaintiff's house, and whose alleged negligence the plaintiff charged had resulted in the burning of his house. He was asked in chief by defendant where he had worked that morning next before going to plaintiff's house, and, when he answered at Sullivan's store, he was asked to describe what he had done there, and how he had bored the holes there, and how he had put the wire through, and then was asked to describe how he put in the wire at plaintiff's house. Upon cross-examination of this witness, it was the plaintiff's right to test the accuracy of his statements with regard to these matters, and why he had done them in one way at Sullivan's and in another way at plaintiff's house, and his reasons for boring a half-inch hole at Sullivan's, and for using a quarter-inch hole at plaintiff's. All the cross-examination on these matters was competent, not to show to the jury how the work had been done by the witness at Sullivan's, but to test

the accuracy and consistency of the plaintiff's statements as to how he had done the work at plaintiff's house, and the weight which the jury should give to his statements. And with regard to the scorching of the window frame at Sullivan's, the witness Rauch had testified that he did not think he had ever scorched or burned the woodwork of a house in soldering a telephone wire; that he had soldered the wire at plaintiff's house just as he had done at Sullivan's; and that he had not burned the wood at Sullivan's, and would consider it careless to do so. It should be borne in mind that plaintiff's house had been destroyed, and that no one saw the witness do the soldering there or saw the window casing after he left, and direct proof of its condition when witness left it was not obtainable. When, therefore, he testified that he did the soldering with the same iron and in the same way at both places, and did not burn the wood at either place, and when the defendant had him experiment with a piece of wood before the jury to demonstrate that such a heated iron would not burn the wood, surely it was competent, material, and pertinent for the plaintiff to show that the witness had actually scorched the window frame at Sullivan's. It is quite true that proof of the fact he had at other times been careless or unskillful would not be competent testimony to show that he was careless or negligent at the plaintiff's house, but by cross-examination any inconsistency in his testimony could be exhibited, and the fact stated by him that the heated iron would not burn a window frame was a fact which was directly pertinent to the issue, and could be contradicted. This fact was directly pertinent to the question of the possibility of the fire originating from the use of the soldering iron, the defendant having adduced testimony to show its impossibility.

The other exceptions relate to alleged errors in the instructions and charge. By the defendant's third prayer, which the court refused, the court was asked to say that, if the jury found that there were other theories of the origin of the fire equally as probable as the one on which the plaintiff based his claim, they must find for the defendant. It cannot be said that this proposition was happily worded. The duty of the jury was not to evolve theories, and base their verdict upon probabilities. It was to determine whether or not the plaintiff had proved that the fire originated from the negligent use of the soldering iron by defendant's workman. The court instructed them that before they could find for the plaintiff they must reach the conclusion from the evidence that the fire resulted from the defendant's negligence; otherwise they must find for the defendant. And by the seventh instruction, as granted, they were told that, even if they found from the evidence that the theory advanced by the plaintiff was more probable than any advanced by the defendant, still they would not be justified in finding for the plaintiff, unless they found from the evidence that the plaintiff's theory was the true one. They were also instructed by defendant's sixth prayer that the burden of proof was on the plaintiff to prove that the fire was the result of the defendant's negli-

gence; and by the defendant's second prayer, that the presumption was that the work had been done in a skillful and proper manner. We think that the gist of the defendant's third prayer was better expressed in other instructions asked by the defendant and granted, and also in the court's charge. It was therefore no error to refuse it in the form asked by the defendant's third prayer.

The defendant's fifth instruction asked the court to say that the fact that in a part of the cellar, under a room adjoining the library and divided from the cellar under the library, there were leaves banked up to the height of four or five feet in a corner, and that in part of the cellar there was a flue to the top of the chimney, was evidence from which the jury might find that the plaintiff was guilty of contributory negligence. Contributory negligence is such want of ordinary care on the part of a plaintiff as, co-operating with the negligent act of the defendant, is a proximate cause of the injury. How could it be held to be want of ordinary care in the plaintiff to keep leaves or newspapers or kindling wood in a part of his cellar divided off by a partition from the cellar under a room in which a workman was to solder a telephone wire? The fact that there were leaves in the cellar was a pertinent fact for the jury to consider in ascertaining if the fire might not as well have originated in some other way as from the hot soldering iron, but, when the jury had found that the fire originated from the negligent use of the hot soldering iron, the fact that there were leaves in the cellar had no causal connection with the origin of the fire. The prayer does not even require the jury to find that the fire was first communicated to the leaves, or that the fire could have been prevented if the leaves had not been in the cellar. It is quite obvious that there was no error in rejecting this prayer.

The next exception is to the modification which the court made in the defendant's seventh and eighth prayers. The court substituted in the defendant's seventh prayer, for the words, "they [the jury] must be satisfied and convinced by the evidence," the words, "they must find from the evidence"; and in the eighth prayer, for the words, "unless they are convinced by the evidence," the words, "unless they find from the evidence." An instruction to the jury that they must "find" a fact as to which there is conflicting testimony means, by common acceptance, that they must be satisfied of it to that degree of certainty which the case requires,—that is, in a criminal case, as to a fact necessary to constitute the crime beyond a reasonable doubt; in a civil case, by such preponderance of evidence as satisfies the mind. The word "find" had been several times used in this sense in the judge's charge and in the instructions granted at defendant's request. The court had used the words "to find," "to be convinced," "to reach the conclusion," in a way that could leave no doubt as to what was intended. That the court adhered to the word already used to express the same meaning is not error. A judge is not bound to adopt the language suggested by counsel, and should refuse to use it when it would seem to indicate a distinction where none is intended by him. Ayers v. Watson, 137 U. S. 601, 11 Sup. Ct. 201.

It is excepted to that the judge in his charge said that he was not aware of any evidence which tended to show that the fire commenced at any other place than under the library floor, but at the same time the judge said to the jury that, if there was any conflicting testimony tending to show that the fire commenced in any other place, they must consider it, and determine the case upon the weight of all the evidence. This certainly left all the testimony to be considered by the jury, and is not error. Allis v. U. S., 155 U. S. 117, 15 Sup. Ct. 36.

Certain portions of the judge's charge set out in the statement of facts preceding this opinion, and marked "a," "b," and "c," were excepted to upon the ground that the language used, as to the acts of negligence which would make the defendant liable, was too comprehensive, and that the instruction should have been restricted to the acts of negligence alleged in the plaintiff's declaration. The declaration alleged but one act of negligence, viz. that in soldering the wire the soldering iron was carelessly and negligently brought in contact with the window frame at the place where the hole was bored, and thereby the house was set on fire. This was the sole act of negligence which the proof tended to establish. It was the one issue of fact by which, throughout the trial, the pertinency of the evidence offered was tested, and when, therefore, the court spoke to the jury with regard to the plaintiff's dwelling having been burned by the carelessness or negligence of the defendant's workman, there was but one act of negligence to which his remarks could possibly apply. In our examination of the whole case we do not find any rule of law incorrectly stated, or any instruction granted or refused in which there is reversible error. The judgment is affirmed.