UNION ICE CO. v. DETROIT & MACKINAC RAILWAY CO.

1. EVIDENCE—USE OF MEMORANDA—REFRESHING RECOLLECTION.

There was no reversible error in permitting a witness for plaintiff, which claimed that its icehouse was set on fire by defendant's locomotive, to use, in testifying, a lengthy memorandum of materials that had been employed to construct the buildings, thereby refreshing his recollection.

2. SAME—EXPERT TESTIMONY—RAILROADS.

The opinion of a witness who had had 22 years' experience as a railroad engineer that a locomotive in proper condition would not emit sparks capable of setting a fire about 50 feet from the tracks, was admissible, although he had not had charge of locomotives with the same kind of spark arrester that the one carried which it was claimed had started the fire.[1]

---

[1] As to the distance within which sparks from a properly equipped engine will set fire as subject of expert testimony, see note in 22 L. R. A. (N. S.) 1039.

3. INSURANCE—PARTIES—FIRE—ACTIONS.

The fact that the plaintiff in an action for destruction of a certain icehouse by fire, had, after receiving the insurance, entered into a contract to begin an action and pay over half of the proceeds to the several insurance companies, was immaterial and the trial court rightly excluded evidence thereof.

4. RAILROADS—FIRES—LOCOMOTIVES.

Under testimony that a locomotive in proper order would not emit sparks capable of kindling a fire from 40 to 50 feet from the track, that the fire started by defendant's engine at about that distance from the tracks, the question whether the spark arrester used was in proper order was for the jury, although defendant's evidence showed that an inspection made but a few hours after the fire disclosed that the arrester was in perfect condition.

5. SAME—CONTRIBUTORY NEGLIGENCE.

And the plaintiff was not chargeable with contributory negligence because it permitted inflammable substances to remain near its icehouse. Requests to charge on that subject were correctly refused.[1]

Error to Bay; Collins, J.   Submitted June 17, 1913. (Docket No. 3.)   Decided January 5, 1914.

Case by the Union Ice Company against the Detroit & Mackinac Railway Company for negligently setting fire to plaintiff's icehouse.   Judgment for plaintiff. Defendant brings error.   Affirmed.

*Henry, Henry & Henry (James McNamara,* of counsel), for appellant.

*Hall, De Foe & Hall,* for appellee.

On March 24, 1910, plaintiff's icehouse, located a short distance north of Bay City, was destroyed by

---

[1] And on the question of the duty of an abutting owner to prevent accumulation of combustible materials near right of way, see note in 12 L. R. A. (N. S.) 624. And upon the duty of the owner of property adjoining a railroad right of way to protect it from fires set out by passing locomotives, see note in 12 L. R. A. (N. S.) 526.

fire. The house, which was full of ice, stood between the right of way of defendant company and the lake shore. Its westerly end was distant from defendant's main line track about 85 or 90 feet. Upon the day in question, a passenger train, running south, passed the icehouse at about 11 o'clock a. m. Within a very few minutes thereafter (probably not more than 10), employees of plaintiff discovered a fire outside defendant's right of way and near the southwest corner of the icehouse. A very strong wind was blowing from the southwest, and though they, and others who immediately gathered, endeavored to extinguish the blaze, which by the time they had reached the spot had already attacked the house, they were not successful, and the building and appurtenances were destroyed. The ice, though not utterly destroyed, was very seriously damaged. At the time of the fire, plaintiff was insured in eight different companies. In settlement of this insurance it received the sum of $10,000. Each insurance company, upon payment of its proportionate share, received from plaintiff an assignment subrogating the assignee to the plaintiff's right of action against defendant to the extent of the amount of the sum paid by the insurance company. On August 3, 1910, and before suit was commenced herein, the eight insurance companies, by Berger & Hicks, their attorneys, entered into a contract with plaintiff which provided that suit should be brought against defendant in the name of the plaintiff, and that if a judgment was recovered it should be divided, one-half to go to plaintiff and the other half to be divided among the insurance companies in proportion to the sums which had been paid by each in settlement of the loss.

Upon the trial defendant, evidently having knowledge of this situation, questioned plaintiff's right to sue in its own name for the use and benefit (in part) of the insurance companies. Whereupon plaintiff (in

the absence of the jury) produced the subrogation contracts and the contract with reference to the commencement of suit and the division of the judgment. It also produced Mr. Hicks as a witness to prove the execution of the latter agreement on the part of the insurance companies. Defendant insisted that no legal authority to execute the latter contract had been shown and further insisted that all the evidence should be laid before the jury. The court held that the plaintiff was properly authorized to bring the suit, excluded the various agreements, and in the charge directed the jury that whether there was insurance or not was a question of no moment and one which they should not consider.

The following special questions were propounded to the jury and were answered as indicated:

"*Q.* Did the fire which burned the icehouse and property involved in this suit originate from fire out of engine No. 31 of the defendant railroad company on March 24, 1910?

"*A.* Yes.

"*Q.* Were the machinery, spark arrester, smokestack, and fire box of defendant's engine No. 31 on March 24, 1910, as it passed southerly by plaintiff's icehouse at Tobico, in good order?

"*A.* No.

"*Q.* Was engine No. 31 on March 24, 1910, as it passed southerly by plaintiff's icehouse at Tobico, properly managed?

"*A.* Yes.

"*Q.* Could not engine No. 31, if in good order and properly managed, on the 24th of March, 1910, between 11 and 12 o'clock, emit fire sparks which might have set the fire which ignited the icehouse?

"*A.* No.

"*Q.* On March 24, 1910, was engine No. 31 equipped with proper type or kind of spark arrester, smokestack, machinery, and fire boxes when it passed the icehouse involved in this suit?

"*A.* Yes."

A general verdict in favor of plaintiff in the sum of $15,000 followed.

BROOKE, J. *(after stating the facts)*. The first assignment of error discussed in defendant's brief relates to the testimony of Alvin E. Schmidt and to the admission of Exhibits B, C, and E with reference to which he gave evidence. It appears that the icehouse as originally constructed was 100 feet broad by 200 feet long. After plaintiff acquired the property, it caused to be erected, upon each side of the original structure, an addition 100x200, so that when it was destroyed the icehouse was a building 300x200. Witness Schmidt was in charge of the work when the additions were built. The exhibits in question were prepared by him and contained a statement of the kind and amount of material used in the structure together with his estimate of the value thereof. His testimony as to value was based upon the figures he had previously placed in the exhibits. These, in turn, were in part predicated upon his own knowledge and in part resulted from his inquiries from others as to certain materials, with the value of which he was not familiar. We are of opinion that the evidence was properly admitted. *Close* v. *Railroad Co.*, 169 Mich. 392 (135 N. W. 346). It is obvious that the exhibits themselves are not substantive evidence of the facts and figures they purport to contain, and we do not understand they were admitted as such. They are but papers of convenient reference, which enable the witness to testify to voluminous and complicated computations previously made by himself, the details of which it would be utterly impossible for any witness to carry in his head. Aside from this, no evidence was offered on behalf of defendant questioning the correctness of the estimates of materials and values made by Schmidt, and it is not now claimed that the verdict is excessive.

Joseph Wendell, an engineer of 22 years' experience upon the Grand Trunk Railroad, was permitted to give evidence that in his opinion a locomotive in proper condition would not emit sparks capable of setting a fire at a distance of 40 or 50 feet from the track. The objection to this testimony was that Wendell had driven only locomotives equipped with a woven wire spark arrester, whereas defendant's engine was equipped with a perforated plate spark arrester. The question to which objection is made refers to neither type of spark arrester, but refers to an engine "in proper condition for arresting sparks." We think the witness was, through his experience, qualified to give expert evidence, and that his answer was properly admitted.

The next question arises with reference to the subrogation agreements and the contract, Exhibit H, between plaintiff and the insurance companies. After a very extended colloquy between court and counsel and the taking of the testimony of Mr. Hicks, in the absence of the jury, the exhibits were excluded by the court, and the evidence of Mr. Hicks was not placed before the jury. Counsel for defendant took exception to this action and now insists that the whole matter should have been submitted to the jury; the authority of Mr. Hicks to execute the Exhibit H having been questioned. We can readily appreciate the fact that it might be of advantage to defendant to be able to show that certain insurance companies would participate in any judgment which might be rendered against it, but we are of opinion that it had no legal right to do so. Its tort (if one was committed) was against this plaintiff, and the right of action which grew out of the tort was one and indivisible. *Continental Ins. Co.* v. *Lumber Co.*, 93 Mich. 139 (53 N. W. 394, 32 Am. St. Rep. 494). The plaintiff undoubtedly was possessed of the substantive right and was the proper party to bring the suit. Had it done

so, without executing the various subrogation contracts, it would still necessarily have acted in the capacity of a trustee, as regards the judgment, for the benefit of the insurance companies, in accordance with the terms of the policy contract. The relation would be implied by law. *Federal Ins. Co.* v. *Insurance Co.*, 202 Fed. 648, 121 C. C. A. 58; *Southern Bell, etc., Co.* v. *Watts*, 66 Fed. 460, 13 C. C. A. 579; *Phœnix Insurance Co.* v. *Transportation Co.*, 117 U. S. 312 (6 Sup. Ct. 1176). The defendant is interested only in knowing that a judgment, in the suit brought, will relieve it from all liability for the consequences of its tort. As we have seen, the cause of action is indivisible. No one of the insurance companies could bring an action in its own behalf even in the name of the insured. We conclude that the court properly ruled that the entire question of insurance was immaterial to the issue, and that the defendant is not legally interested in knowing how the judgment against it shall be divided, or whether the contract providing for its division is or is not legally executed.

It is strenuously contended on behalf of defendant that a verdict should have been directed in its favor because (it is claimed) there is no evidence that the engine in question was not in "good order." Defendant caused an inspection of the engine to be made a few hours after the fire occurred and offered evidence to show that the spark arrester, as well as all other parts of the engine, was in perfect condition. Plaintiff was unable to meet this evidence with any direct proof that the spark arrester was not in good order, but there was abundant testimony (introduced for the most part by defendant) to the effect that an engine in "good order" would not emit sparks capable of kindling a fire at a distance of 40 to 50 feet from the track. The eyewitnesses first upon the ground agree that the fire started at a point quite that distance from

the track over which the engine in question ran. Under these circumstances, we think the question was for the jury, and that a directed verdict was properly refused. *Peter* v. *Railway Co.*, 121 Mich. 324 (80 N. W. 295, 46 L. R. A.. 224, 80 Am. St. Rep. 500); *Clark* v. *Railway Co.*, 149 Mich. 400 (112 N. W. 1121, 12 Am. & Eng. Ann. Cas. 559); *Potter* v. *Railway Co.*, 157 Mich. 216 (121 N. W. 808, 22 L. R. A. [N. S.] 1039).

Defendant submitted a request to charge upon the question of plaintiff's contributory negligence based upon the fact that plaintiff had permitted sawdust, hay, and chaff to remain upon the ground in close proximity to the icehouse, thus materially increasing the risk from fire. The request was properly refused under the authority of *Peter* v. *Railway Co., supra.* The decisions upon the point are not without conflict, but the weight of authority is with the rule announced. Error is assigned upon the charge of the court. The charge taken in its entirety is a correct exposition of the applicable law.

The judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.