MICHIGAN MUTUAL HOME INSURANCE CO. *v.* PERE MARQUETTE RAILWAY CO.

1. INSURANCE—FIRE POLICY — RAILROADS — NEGLIGENT SETTING OF FIRES.

> Where a witness saw a train pass near a field of stubble which was shortly after on fire and which set fire to the buildings on the farm of one who was insured by the plaintiff, and it was shown that the wind was blowing from the railroad towards the buildings, the evidence presented a question for the jury as to the origin of the fire, and under evidence tending to show, in defense, that the locomotive had been inspected and was in good condition, the question of its fitness for operation was for the jury.

2. Evidence—Compromise and Settlement.

Plaintiff was also entitled to the request to charge that in determining whether the engine was in good working order or not the jury might consider the fact that subsequent to the bringing of suit the defendant paid the property owner $2,800 for his loss, not covered by insurance; it was not incompetent under the rule excluding proof relating to negotiations for compromise, upon evidence that the payment had not been made under circumstances that the court could infer an understanding that evidence of it should not be offered.

3. Same—Province of Court.

Whether the testimony is admissible in any particular case is a preliminary question to be decided by the trial court, and is analogous to the determination of the admissibility of confessions in criminal cases.

4. Same—Amount of Claim—Insurance.

Testimony having a tendency to show that the adjustment made with the property owner proceeded along usual lines, and was not so much a question of liability as of amount, authorized the court in receiving it as proof of, or an admission of, liability.

5. Same—Amendment.

And taking into consideration the fact that plaintiff offered no proof of negligence in operating the locomotive, it was not error of a harmful nature to permit an amendment of the declaration at the trial so as to count upon negligence in operating the engine; nor was defendant necessarily entitled to an adjournment on account of surprise.

Error to Oakland; George W. Smith, J. Submitted June 28, 1915. (Docket No. 57.) Decided December 21, 1916.

Case by the Michigan Mutual Home Insurance Company against the Pere Marquette Railway Company for the negligent operation of its locomotives and the setting of a fire. Judgment for plaintiff. Defendant brings error. Affirmed.

*Parker, Shields & Brown* (*DeWitt H. Merriam* and *Pelton & McGee.* of counsel), for appellant.

*Perry & Lynch,* for appellee.

BIRD, J. In July, 1911, Ira Wilson was the owner of a farm in Wayne county, lying near Elm station along the line of defendant's railroad. On Sunday, July 9th, of that year, his farm buildings with most of their contents were destroyed by a fire which, it is asserted, originated on the defendant's right of way and was communicated to his farm buildings through a dry stubble field. To satisfy two policies of insurance which Wilson held in plaintiff company, he was paid $2,636.95. Wilson also made a claim against the defendant railroad company, and after receiving the insurance money the defendant paid him $2,800 in settlement of his claim. The plaintiff insurance company then brought this suit to compel defendant to reimburse it for the amount paid on the policies, on the theory that the fire was caused by its negligence. The plaintiff had judgment for the amount of its claim, and defendant assigns error.

1. A directed verdict was requested because of the failure of the plaintiff "to show that defendant was responsible for the origin of the fire." It appears from the testimony of Mr. Harvey E. Meldrum, who testified as to the origin of the fire, that he was at the station of Elm on the Sunday morning in question awaiting the arrival of an east-bound excursion train. That while so waiting an east-bound freight train passed the station and within a few moments thereafter he saw a fire west of the station on the right of way near the fence; that when the freight train was approaching he looked in that direction, but saw no fire; that the fire spread to the wheat stubble and rapidly through it to the farm buildings 30 rods distant. It also ap-

peared that the wind was blowing in the direction of the buildings and the ground was. very dry. This testimony with other of like kind was sufficient to make a case for the jury on the question of the origin of the fire. *Jones* v. *Railroad Co.*, 59 Mich. 437 (26 N. W. 662) ; *Hagan* v. *Railroad Co.*, 86 Mich. 615 (49 N. W. 509) ; *Clark* v. *Railway Co.*, 149 Mich. 400 (112 N. W. 1121, 12 Am. & Eng. Ann. Cas. 559) ; *Potter* v. *Railway Co.*, 157 Mich. 216 (121 N. W. 808, 22 L. R. A. [N. S.] 1039) ; *Union Ice Co.* v. *Railway Co.*, 178 Mich. 346 (144 N. W. 1033) ; *Pennsylvania Fire Ins. Co.* v. *Railroad Co.*, 184 Mich. 375 (151 N. W. 578).

2. Appellant contends that it discharged the burden imposed upon it by the statute of showing that the machinery, smokestack, and fire box of the engine were in good repair, and that it was. thereby entitled to have the jury so instructed. Three boiler makers, who were in the employ of the defendant in 1911, were produced as witnesses upon this phase of the case. One of them, John Doyle, the day inspector, identified his report (Exhibit 1), which he testified showed that engine No. 502 was O. K.—that is, in good condition. His testimony does not disclose upon what date he inspected the engine, or whether he did it personally, and we are unable to learn from Exhibit 1, as it was not returned in the record. The witness Harrington, the night inspector, testified that he inspected the engine on July 18th, and identified his report thereof (Exhibit 2), which he testified showed that the engine was then in good condition and needed no repairs. Exhibit 2 is not returned in the record. Neither inspector testified as to any personal knowledge of the condition of the engine at or about the time in question, and neither testified that his report was correct, although each testified that his report showed the engine to be in good condition. The third witness, Froy, testified that he knew nothing of the condition of en-

gine No. 502 on the day in question, but testified that the netting or screen used thereon was the standard size mesh, in general use on locomotives, and that the life of the netting was about six months. Mr. Cummings, the engineer in charge, testified that on the morning in question he was hauling 50 cars, that it was down grade through Elm station, and that the engine was not laboring hard when it passed the Wilson premises. It also appeared from his testimony that if the spark arrester were in good repair it would emit some sparks at the rate he was running while passing the Wilson premises, although he was unable to give any opinion as to the life of such sparks.

The testimony bearing on the condition of the engine as appears by the record is not so clear and conclusive as to make it the duty of the trial court to determine the question as a matter of law. The testimony of defendant was fairly open to the inference that the netting or screen was out of repair, or it would not have emitted sparks with sufficient vitality to set fire to the right of way when the engine was coasting down grade. We are of the opinion that the whole question of the negligence of the defendant was a question of fact, and was properly submitted to the jury.

3. Error is predicated upon that portion of the charge which reads:

"In determining whether or not the engine was in good working order, the jury have a right to consider, among other circumstances in the case, the fact that subsequent to the time of this fire and some months thereafter, the defendant company paid to Ira Wilson, whose property had been destroyed, $2,800, on account of said loss."

It is strenuously insisted by the defendant that this instruction was error, and that the testimony upon which it was based should have been excluded under

the rule that what was said and done by the parties by way of compromising their differences was inadmissible. If the testimony were admissible at all it was upon the theory that the payment of $2,800 to Wilson by the defendant was an admission of its liability. The general rule regulating the admission of such testimony is stated in *Manistee National Bank* v. *Seymour*, 64 Mich. 59 (31 N. W. 140). In that case defendant Seymour was denying liability as an indorser on certain promissory notes sued upon. The proof was offered and received that on a certain occasion when he was having an interview with the bank officials, he offered to turn over his bank stock in payment of the notes. This court in passing upon the competency of the proof said:

"The testimony shows that the admission was not made upon an express condition that evidence of it was not to be given, or under circumstances from which the judge could infer that the parties agreed together that evidence of it should not be given. The general rule is that all admissions not expressly made to make peace, and all independent facts admitted during the negotiations for settlement, are admissible in evidence"—citing authorities.

See, also, *Taylor* v. *Railway Co.*, 101 Mich. 140 (59 N. W. 447) ; *Grimes* v. *Keene*, 52 N. H. 330; *Needham* v. *Sanger*, 17 Pick. (34 Mass.) 500; *Galveston, etc., R. Co.* v. *Hertzig*, 3 Tex. Civ. App. 296 (22 S. W. 1013) ; *Chicago, etc., R. Co.* v. *Rhodes*, 21 Colo. App. 229 (121 Pac. 769) ; 1 Greenleaf on Evidence, § 192; *Howland* v. *Bartlett*, 86 Ga. 669 (12 S. E. 1068) ; *Campbell* v. *Railway Co.*, 86 Mo. App. 67; *Weiss* v. *Kohlhagen*, 58 Or. 144 (113 Pac. 46) ; *Colburn* v. *Groton*, 66 N. H. 151 (28 Atl. 95, 22 L. R. A. 763).

There is much seeming disagreement among the cases in regard to the admission of this class of testimony, but a study of them discloses that the apparent conflict is due not so much as to what the rule is as it

is to its application to the facts. If the holding in *Manistee National Bank* v. *Seymour, supra,* is to be followed, we are of the opinion that the testimony was properly received. Whether the testimony is admissible in any particular case is a preliminary question to be decided by the trial court, and is analogous to the determination of the admissibility of confessions in criminal cases. *Colburn* v. *Groton, supra.*

In the present case the testimony discloses that Wilson made a claim against the railroad company for $7,300. This appears to have been made to cover the insurance as well as the additional loss. After receiving the insurance money the defendant paid him $2,800 for the balance of his claim. It appears that a receipt was given to the defendant, showing, in substance, the purpose for which it was paid, but it was not introduced in evidence. About the only reason assigned in the testimony for the payment, aside from liability, was that the payment was made to avoid litigation because Wilson's land lay along the right of way of defendant. It does not appear from the testimony that defendant denied liability, neither does it appear that payment was made with any understanding, express or implied, that evidence should not be given of the fact of payment, nor is there any testimony showing that when payment was made defendant was not to be prejudiced thereby, nor was it the result of a compromise. So far as the evidence tends to show anything concerning it, it shows the settlement proceeded along the usual lines, and that it was not so much a question of liability as of amount. With no further showing than this we think the court was justified in receiving the testimony.

4. The negligence alleged by the declaration was the failure of the defendant to keep the engine and machinery in repair. Upon the trial the declaration was amended upon the application of plaintiff so as

to cover negligent operation of the engine. Complaint is made because the court refused to grant an adjournment which defendant claimed on account of surprise. In view of the fact that plaintiff offered no proof of negligent operation and did not finally claim any, we think the error, if it were one, was harmless.

We are of the opinion that the judgment should be affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.