CLARK *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. RAILROADS—FIRES—CAUSE OF FIRE—EVIDENCE—SUFFICIENCY.
   In an action against a railroad company for damages caused
   by fire alleged to have been set by its locomotive, evidence
   examined, and *held,* circumstantially sufficient to go to the
   jury on the issue whether defendant's locomotive set the fire,
   there being proximity of time and place.

2. SAME— NEGLIGENCE— LOCOMOTIVE— EQUIPMENT AND MANAGE-
   MENT—UNCONTRADICTED EVIDENCE—EFFECT.
   In an action against a railroad company for damages caused
   by fire set by its locomotive, testimony for defendant to the
   effect that the locomotive was properly equipped and man-
   aged, if uncontradicted, is conclusive, under section 6295, 2
   Comp. Laws, and is not to be measured against an alleged
   presumption of improper equipment or of improper manage-
   ment arising upon the fact that the locomotive set the fire.

3. SAME—WILLFUL INJURY — CUTTING FIRE HOSE — LIABILITY OF
   COMPANY.
   Where a fire hose is necessarily laid across a railroad track for
   the purpose of extinguishing a fire, and trainmen, with
   warning of the presence of the hose, unnecessarily run upon
   and cut it, the railroad company is liable for the property
   destroyed in consequence of the delay in procuring water
   caused by that act; but the company's servants are not charge-
   able with negligence in not looking for and discovering the
   hose, and an instruction which bases liability on constructive
   knowledge of the presence of the hose is erroneous.

Error to Eaton; Smith, J. Submitted October 9, 1906.
(Docket No. 24.) Decided September 20, 1907.

Case by Sarah P. Clark against the Grand Trunk
Western Railway Company for negligently burning plain-
tiff's buildings. There was judgment for plaintiff, and
defendant brings error. Reversed.

In three counts of plaintiff's declaration it is charged
that fire from one of defendant's locomotive engines was

negligently cast upon and set fire to the premises of plaintiff. In a fourth count the charge is that the same premises being found to be on fire, the fire company of the city had attached a hose to a nearby hydrant, laid the hose across the defendant's tracks, in a street there crossing said tracks, and was about to and could easily have extinguished the fire but for the act of servants of defendant in negligently running another locomotive engine and cars over and upon the hose, cutting and destroying it, delaying the firemen until the conflagration had reached a stage where it could not be controlled. The plea was the general issue. The case went to the jury upon both charges and a general verdict for plaintiff was returned, upon which judgment was entered. The substance of all the evidence given upon the trial is returned, and the errors assigned, and relied upon by counsel for defendant, present three principal questions:

(1) Whether there is any evidence that defendant set the fire.

(2) Whether the evidence that the engine was in proper condition and properly managed (2 Comp. Laws, § 6295) required the trial court to withdraw the question of its condition and management, and the one of defendant's liability for setting the fire, from the jury.

(3) Whether there is any evidence of negligence in cutting the fire hose, and, if there is, whether there is resulting liability to pay for the damage done by the fire.

*H. Geer*, for appellant.

*Barger & Hicks* and *Frank A. Dean*, for appellee.

OSTRANDER, J. (*after stating the facts*). 1. The fact that the fire was set, as alleged, must be proved; not, necessarily, by the testimony of an eyewitness, but by evidence which reasonably leads an inquiring and unbiased mind to the conclusion that a cinder from the particular engine caused the fire. The evidence is not sufficient if it establishes no more than that the fire might so have been set.

149 MICH.—26.

"The origin of a fire under such circumstances must be established so as to produce conviction, to a reasonable certainty, on an unprejudiced mind, the same as any other fact; and, until there is evidence to so establish it, the defendant is not called upon to prove that the fire was not caused as alleged." *Finkelston* v. *Railway Co.*, 94 Wis. 270.

The evidence presented to support the inference that the fire was set, as alleged, is in substance here stated, and, where there are variations, in form most favorable to plaintiff. The defendant's tracks run, at the place in question in the city of Charlotte, from the northeast to the southwest, and plaintiff's premises are south and east of the tracks. On the morning of November 9, 1903, an alarm of fire was turned in at about 1:48 o'clock, by whom is not shown, and a fire was discovered by those who responded to the alarm in the southwest corner of a shed 70 feet long and from 15 to 20 feet high from ground to peak of roof, running substantially parallel with defendant's tracks and connected with a larger and main building by a covered passage and a door. There were grass and papers and other debris along the right of way and near the shed which was about 35 feet from the track on which the train, hereinafter referred to, was running. It is not claimed, however, that the fire was set otherwise than by a cinder or spark carried in the air to or upon the shed. The wind was blowing quite strongly from the southwest—that is to say, up the right of way in a direction opposite to the one the train was moving. It was very dry, the shed was built of wood, was old and dry. The shingles were warped.

"I could not tell whether the fire was on the side of the building next to the railroad or whether it was on the top of the building. * * * The blaze was coming from the southeast (probably meaning southwest) corner of my rim shed. * * * It was apparently all on the outside of the building or near the roof or on the roof. * * * It was in the southwest corner of the shed. I first discovered the fire in the southwest corner of the rim shed.

*   *   *   It seemed to be in the southwest portion of it.
*   *   *   In the .southwest corner of the rim shed.   A
small blaze was on the outside of the building and seemed
to be eating towards the roof.   *   *   *   It was in the
corner of those sheds.   *   *   *   I couldn't say where the
fire was in reference to this .building except that I knew
it was in the end of the rim shed somewhere.   *   *   *
Was on the south and west side of those sheds.   *   *   *
There was some fire on top.   I didn't think there was any
on the inside.   I didn't go in.   *   *   *   In the south-
west corner of the sheds.   *   *   *   It was on the outer
portion of the works next to the track and in the roof.
*   *   *   The fire had started in the rear of the building
at the southwest corner.   *   *   *   The fire was in the
southwest corner of the rim shed; apparently on the out-
side of the building, running up into the roof."

These are statements of various witnesses for plaintiff,
including the owner, her employé, and the firemen, about
the position of the fire when first seen by them.   About
15 or 20 minutes before the alarm of fire was given,
a passenger train .went west on defendant's road.   None
of plaintiff's witnesses saw it.   There is testimony to
the effect that the engine was puffing very hard and
seemed to be going fast; this from witnesses who were, at
the time, indoors.   No one on the train saw any fire in
plaintiff's shed.   No evidence was introduced on the part
of the plaintiff to prove the condition, equipment, or man-
agement of the locomotive.   Plaintiff's premises, the rear
of which abuts upon the railroad right of way, are near
the intersection of Sheldon street and Foote street, about
800 feet to the west or southwest of the railroad station. .
There are a number of buildings used for residences and
for other purposes in the immediate vicinity.   No testi-
mony was introduced tending to prove that the fire was
set in any way other than as claimed by plaintiff.   Coun-
sel for plaintiff argue that the testimony introduced by
defendant upon the subject of the integrity and manage-
ment of the locomotive on the night in question furnished,
some of it, support for inference that the fire originated in
the manner alleged in the declaration.   We need not set

it out because we have already made it appear that we should not say there is no testimony upon the subject to go to the jury under proper instructions. The locomotive carried fire. The testimony is that an engine in first-class condition and properly managed will emit sparks. The conditions described were favorable to the setting of such a fire as was discovered. There was proximity of time and of place.

2. The testimony for defendant to the effect that the locomotive was properly equipped and managed is not contradicted and is conclusive unless, as counsel for plaintiff insist, it is to be measured against an alleged presumption of improper equipment or of improper management arising upon the fact that the locomotive set the fire. This court has recently construed and applied the statute, 2 Comp. Laws, § 6295, adversely to the contention of the plaintiff here. *Dolph* v. *Railway Co.*, ante, 278. If upon the whole case there is room for inference, based upon evidence, that equipment was defective or that management was improper, the case is for the jury. Whether in any case the fact of setting a fire would be any evidence of infirmity of apparatus or of improper management, must depend upon other facts and circumstances, in evidence.

In the case at bar, no peculiar conditions calling for any unusual care in managing the locomotive were present. Counsel say a conflict of evidence is made by, or room for inference of defective equipment or improper management found in, (1) the testimony of the fireman that he put in coal while passing through Charlotte, the open door of the fire box tending to increase the draft; (2) the evidence that the engine had not before or after the occasion set fires; (3) because the engineer did not inform the jury about "where were the levers," how wide open was the throttle, how he was handling the engine, what he was doing to it, were the drivers slipping opposite the premises in question, how heavy was the train, how much steam was used; (4) the testimony of defendant's

experts that an engine in good repair could not throw sparks a distance of 30 feet and set a fire; (5) the testimony of two of plaintiff's witnesses who heard the train and thought it was going fast, though the engineer said it was running no faster than 12 miles an hour; (6) the evidence that the slipping of the drivers and the weight and speed of the train would be facts indicating whether sparks were given off in greater or smaller quantity. Some of these claims are altogether unsupported by the record, as will be pointed out. Briefly summarized, the testimony on this point is as follows:

The train in question reached Charlotte at 1:27 a. m., leaving at 1:30; its engine, numbered 988, was assigned to the defendant by the Grand Trunk Railway Company of Canada in May, 1903, and had been thereafter used to draw passenger trains between Port Huron and Chicago; the engine had a spark arrester, made of No. 10 wire, with meshes 2½ by 2½ to the square inch, which is as small as experience shows can be used and have an engine steam properly; each engine was washed out after being run 1,000 miles, and a thorough examination made of the fire boxes, netting, smokestack, etc.; there is also a monthly inspection of all engines and the fire boxes and the dampers are examined before every trip. Engine No. 988, according to a record kept by defendant, had her first washout May 17, 1903, and was then in first-class condition as to nettings, diaphragm plates, baffle plates, fire box, and smokestack. A record produced at the trial showed an inspection on November 6, 1903, which disclosed smokestack, netting and plates, ash pans and dampers in good condition. A further inspection was made November 16, 1903, at which time it was in good condition. The engineer in charge on the morning of November 9, 1903, testified that on that trip, which began at 9:00 p. m. on November 8th, at Port Huron, the engine was in good condition; that it was running no faster than 12 miles an hour as it passed plaintiff's premises, and that he was handling it in a careful manner. His next trip on

the engine was on November 14th, and at that time it was in good condition.    Meantime, and on the night of November 9th, another engineer took the engine out and found it in first-class condition.    The fireman testified that on the morning in question, on leaving the station at Charlotte, and following his usual custom in leaving a station, he put in from five to seven shovels of coal, which would have a tendency to smother the fire, cause more smoke to escape, but no sparks.

There is no testimony that an engine in good repair, equipped as this engine was, will not throw sparks 30 or 35 feet and set a fire.    The testimony, that of the master mechanic, is:

" *Q.* Do you think an engine on your road, in good repair, properly handled, would emit sparks through this device with sufficient life to set fire ?

"*A.* I hardly think so.

" *Q.* Your opinion is, as a master mechanic, an engine on your road, equipped with this device in good shape, would not throw sparks of sufficient vitality to cause a fire ?

"*A.* It is possible that they would in some instances.

" *Q.* What would you say now as to whether an engine upon your road equipped with the spark-arresting device which you have described, in good repair and properly handled, would throw live sparks and cinders a distance of 30 or 40 feet and the cinders retain enough vitality or life to set a building on fire, if dry ?

" Objected to as being guesswork.    Objection overruled. Exception for defendant.

"*A.* If it would do this I wouldn't think there would have to be anything the matter with the engine.    However, if there was a hole in the screen it would have more of a tendency to emit sparks than otherwise." ·

The undisputed testimony is, too, that this locomotive had, so far as was known, never before and never since ·set a fire.

The other contentions noted are disposed of by what has already been said, except, perhaps, the one that the engineer did not, in detail, state how he was managing the

engine. He had had 15 years' experience as engineer, the testimony showing him to be a first-class man. While proper management, to excuse liability, is a fact to be shown affirmatively, the omission to relate some small detail of management will not be regarded when counsel for plaintiff do not call for it and when neither the court nor jury can know or assume that the missing detail is material. He did state the speed at which he was running, said that he was not in haste, having plenty of time, that his engine was all right, and that he was running her in a careful manner, but had no particular recollection what he did on that night different from any other night. Defendant's evidence is conclusive that machinery, smokestack, and fire boxes were in good order and properly managed, unless it can be said that the mere fact that a fire was set by the engine in plaintiff's building 35 feet from the track is conflicting evidence. For reasons which have been stated, we are of opinion there was no conflict in the evidence.

3. A wagon carrying 800 feet of hose was used by the fire department and driven north on Sheldon street to Foote street, which makes, with Sheldon, a right angle. On the corner is a hydrant. One of the firemen alighted and connected the hose to the hydrant, the wagon meantime turning west into Foote street, laying the hose behind it and crossing the tracks of defendant's road, which were laid diagonally across the street. It seems to have been the plan to approach the fire from Foote street and the right of way of defendant. Defendant has more than one track at this point and the hose wagon passed some 15 or 20 feet beyond them before stopping. A freight train was at the moment slowly approaching this crossing from the west and it ran upon and cut the hose before water had been turned on, and before the hose could be disconnected and removed. This cutting of the hose is said to have been an act of negligence, resulting in such loss of time that it may be considered the proximate cause of plaintiff's loss. As we have con-

cluded that the case was improperly submitted to the jury upon the first ground of recovery declared upon, and as it is not possible to tell upon which of the grounds declared upon the jury gave its verdict, the judgment must be, in any event, reversed, and à new trial granted. *Leitch* v. *Railway Co.*, 93 Wis. 79; *Patton* v. *Wells*, 121 Fed. 337. It is proper to say, however, and we are of the opinion, that upon a new trial, if the evidence shall satisfy the jury that there was no other efficient way to procure water to extinguish the fire, the hose was rightfully laid across the tracks. If defendant's servants, in charge of the freight train, had notice and warning of the presence of the hose on the tracks (they deny having any notice), and had no occasion for haste, and might have stopped the train, instead of doing which they carelessly ran upon and cut the hose, and the cutting of the hose occasioned such delay in procuring water that the destruction of plaintiff's property was the direct and necessary result of such carelessness, plaintiff may recover upon the second ground set up in the declaration such damages as were consequent upon such delay. *Metallic Compression Casting Co.* v. *Railroad Co.*, 109 Mass. 277; *Little Rock Traction & Electric Co.* v. *McCaskill* (Ark.), 70 L. R. A. 680. Defendant's servants cannot, however, be charged with negligence in not looking for and discovering the hose. Whatever the true rule may be in this regard in cases of traction companies operating a railway in the streets of a city, it would be a hard rule which required those in charge of trains on steam roads to watch for and discover, especially in the night, such obstructions upon the track. In the cases cited, as in *Mott* v. *Railroad Co.*, 1 Rob. (N. Y.) 585, in which a different rule is laid down, the hose was, when cut, filled with water and the plaintiff, in each case, immediately deprived of a means of putting out the fire. In the present case, the hose was attached to the hydrant and a man stood ready to turn on the water when he should receive the signal so to do. So far as the question of proximate cause is concerned, the

same rule should be applied in both cases. The court was in error in giving the jury the following instruction:

" To entitle the plaintiff to recover on this branch of the case, you should be satisfied by a preponderance of the evidence that Mr. Martin, the engineer in charge of the freight train, knew or ought to have known that the hose was across defendant's track, and that such knowledge was brought, or should have been brought, to his attention by reasonable diligence on his part in time for him to have stopped his train before reaching the hose lying across the defendant's track."

Objections were made to the argument of counsel for plaintiff to the jury and they are pressed in this court. It is not likely the same situation will be again presented, and we need make no comment.

The judgment is reversed, and a new trial granted.

GRANT, J., concurred with OSTRANDER, J.

BLAIR, J. We concur as to the third point. As to the second point we think there was a question of fact for the jury.

MONTGOMERY and HOOKER, JJ., concurred with BLAIR, J.