MALLOY v. GRAND TRUNK RAILWAY CO. OF CANADA.

1. FIRES—LOCOMOTIVES—RAILROADS—DIRECTED VERDICT.
   In an action for the negligent burning of plaintiff's barn, alleged to have been caused by a spark from defendant's locomotive, evidence examined, and *held*, that it could not be said, as a matter of law, there was no testimony that a cinder from a particular engine caused the fire.

2. SAME—PLEADING—TIME—VARIANCE.

In such action, while the declaration must allege a specific time, and must prove it as alleged, yet the rule must be applied with reasonable limitation; and a variation of an hour between the averment and the proofs was not fatal, particularly where the defendant, from the averment, was able to meet the proofs made by plaintiff.[1]

3. SAME—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

While the evidence in the case, both upon the question of setting the fire and the condition of the engine, was such as to raise a question of fact for the jury, where the evidence showed that the barn was located at a comparatively great distance from the track, that there had been frequent showers the day prior to the fire, that no other fires had been set in the vicinity, and that the engine in question had never before been charged with setting fire, and the evidence was very convincing that the engine was in a good state of repair on the morning the fire was set, a verdict for plaintiff should have been set aside because it was contrary to the great weight of the evidence, on defendant's motion for a new trial. OSTRANDER, BIRD, and MOORE, JJ., dissenting.

Error to Bay; Collins, J. Submitted June 8, 1916. (Docket No. 31.) Decided July 21, 1916.

Case by James W. Malloy against the Grand Trunk Railway Company of Canada, a foreign corporation, for the negligent burning of plaintiff's barn. Judgment for plaintiff. Defendant brings error. Reversed.

*Harrison Geer* (*William K. Williams,* of counsel), for appellant.

*Gilbert W. Hand,* for appellee.

The plaintiff was the owner of a barn situated 250 feet east of the right of way of defendant railway company's track, about midway between Saginaw and Bay

---

[1] As to effect of variance between allegation and proof as to time, in an action against a railroad company for setting fire, see note in 441 L. R. A. (N. S.) 635.

City. This barn was destroyed by a fire between 8 and 10 o'clock in the forenoon of October 11, 1914. The declaration charges that the fire was set by a passing engine of the defendant company at about the hours of 8 o'clock a. m. It further charges that said engine was not in good order, and was improperly managed while passing said barn. The action is brought under section 6295, 2 Comp. Laws (2 Comp. Laws 1915, § 8305).

Plaintiff's first witness, Schaefer, fixed the time that the train passed as "8 o'clock, between 8 and 9, somewhere along there," and identified it as a freight train. He testified that he saw the barn on fire at a point near the peak, and near the cupola on the roof, about 10 or 15 minutes after the train passed. On cross-examination he expressed the opinion that when he saw the train go by it was nearer 8 than 9 o'clock.

Plaintiff's next witness, Joseph Brandimore, identified the passing train as a freight train, and fixed the time of its passage at about 8 o'clock. He noticed the fire 15 or 20 minutes after the train passed, on the roof at the southwest corner. On cross-examination he said the time was around 8 o'clock; that it might have been a quarter after 8, but could not have been as late as half-past 8. He said the train passed before 9 o'clock; that he could not be mistaken about that— "it was between 8 and 9."

Plaintiff's next witness, Edward Brandimore, saw the train go by "about 8 or a quarter after 8, between 8 and 9 o'clock anyway," and noticed the fire 10 or 15 minutes later. On cross-examination he said, "I know she was a freight."

Benjamin Trombley positively identified the passing train as a freight train, and, without giving the hour of its passage, said that he discovered the fire about 15 minutes after the train passed, on the peak of the roof.

Richard Trombley, in rebuttal, testified that he saw the train pass, believed it to be a freight, and fixed the time as shortly after 8 o'clock—"I would say it was between 8 and half past 9"—and observed the fire which started in the cornice and went up the roof.

On behalf of defendant the train sheet for October 11th was introduced in evidence, and it was shown that the only freight train passing north over defendant's line at that point on the forenoon of October 11th left Durand at 1:30 a. m. and arrived at Bay City at 4:30 a. m.; that the only other train running north over defendant's line in the forenoon of said day was a passenger train which left Durand at 7:12 a. m., left Saginaw at 8:50 a. m., and arrived at Bay City at 9:51 a. m. This passenger train, according to the testimony of the engineer who operated the engine which hauled it, passed the barn, which was burned, later than 9:15 a. m., perhaps 9:30 or 9:35 a. m. Defendant produced further testimony from its records, and the man who made them, tending to show that the fire netting in engine No. 2248, which was the engine passing the barn on the morning in question, was renewed on September 7, 1914, and that all of its equipment for arresting sparks was on that date in good repair. The evidence of defendant's inspector was introduced, and this witness, testifying from his records, said that he inspected engine No. 2248 on the 27th day of September, 1914, and found everything in first-class condition.

Witnesses for both plaintiff and defendant testified that an engine, properly equipped and properly managed, would not throw sparks containing sufficient vitality to cause fire a distance of more than from 50 to 70 feet.

The record discloses the fact that in the vicinity of the fire there had been five showers during the 10th of October. It further appears that from the track to

the barn, a distance of 250 feet, the ground was covered with dead grass, which was untouched by fire. At the time of the fire the wind was blowing from the southwest with a velocity of about 20 miles per hour.

On behalf of the defendant it was shown that the country in the vicinity of the barn was frequented by parties for the purposes of fishing and hunting, and that the doors of the barn which was destroyed had at times been found open.

At the close of the testimony defendant made a motion for a directed verdict on the ground that plaintiff's testimony amounted to no more than a showing that the engine might have set the fire, and that it failed to negative other causes which might have produced the conflagration. This motion was denied, and the case was submitted to the jury under a charge which, in our opinion, was fair, if the case should have gone to the jury at all. The jury returned a verdict in favor of the plaintiff in the sum of $1,186.75.

BROOKE, J. (*after stating the facts*). The first and second propositions argued by counsel for defendant are the following:

"(1) The trial judge erred in refusing to direct a verdict for defendant, for the reason that plaintiff failed to sustain the burden of proof of showing that the fire was set by one of defendant's locomotives as alleged in the declaration.

"(2) Time in a case of this nature is material and must be proved as alleged."

It is said in argument that this court has held in several cases that while it is not necessary for the plaintiff to show by eyewitnesses that the fire was set by a particular engine of defendant, it is necessary for the plaintiff to produce evidence which would reasonably lead an inquiring and unbiased mind to the conclusion that a cinder from a particular engine

caused the fire. *Clark* v. *Railway Co.*, 149 Mich. 400 (112 N. W. 1121, 12 Am. & Eng. Ann. Cas. 559) ; *Hewitt* v. *Railway Co.*, 171 Mich. 211 (137 N. W. 66, 41 L. R. A. [N. S.] 635) ; *Beach* v. *Railway Co.*, 190 Mich. 592 (157 N. W. 285).

Referring to the facts, we find that several witnesses testified that the fire started at or near the peak of the roof of that portion of the barn situated nearest the railroad track. It also appears that none of the witnesses who saw the fire saw any person emerge from the barn at or after the time of its discovery. Under these conditions we do not think it can be said, as a matter of law, there was no testimony which would reasonably lead "an inquiring and unbiased mind to the conclusion that a cinder from a particular engine caused the fire."

But it is said that the evidence is uncontradicted as to the time of the fire, which plaintiff's witnesses fixed between 8 and 9 o'clock, and a witness on behalf of defendant with certainty at 8:30 o'clock. It is further urged that, inasmuch as the passenger train did not pass the barn until after 9:15 a. m., and as that train was the only train which passed the barn, it was a physical impossibility that it should have emitted the spark which caused the fire. In this argument defendant overlooks the fact that several of the witnesses for plaintiff testified positively that the fire was discovered a few minutes *after* the passage of the train. The fact that they fixed the time of its passage at between 8 and 9 o'clock instead of 15 or 30 minutes later is, we think, of no very great consequence. Defendant claims that plaintiff is bound to allege a specific time in his declaration, and that such time should be proved as alleged, citing *Hewitt* v. *Railway Co.*, 171 Mich. 211 (137 N. W. 66, 41 L. R. A. [N. S.] 635). An examination of that case will show that it is not controlling. That the declaration must allege a specific

time, and must prove it as alleged, is true, but this rule must be applied with reasonable limitation. The purpose of the pleading is to enable the defendant to prepare his defense. A variation of an hour between the averment of a declaration and the proofs is not fatal, particularly where, as in the case at bar, the defendant, from the averment, is able to meet the proofs made by the plaintiff thereunder.

It is the claim of defendant that, having shown by reputable and uncontroverted evidence that the spark arrester in the engine in question, as well as all its other appliances, was in good condition, and such as good railroading requires under the statute, and, further, that the engine at the time it passed the barn was properly managed, a verdict should have been directed in its favor, under the authority of *Dolph* v. *Railroad Co.*, 149 Mich. 278 (112 N. W. 981) ; *Clark* v. *Railway Co.*, 149 Mich. 400 (112 N. W. 1121, 12 Am. & Eng. Ann. Cas. 559) ; *Penn. Fire Ins. Co.* v. *Railroad Co.*, 184 Mich. 375 (151 N. W. 578). In the *Dolph Case* the building burned was located 80 feet from the track, and it was there said:

"And it was a conceded fact that all properly constructed engines will sometimes emit fire"

—and it was held that the statute does not make it an issue of fact that must, under all circumstances, be left to the jury. In the case at bar we have testimony to the effect that an engine in good repair and properly managed will not emit sparks containing sufficient vitality to cause fire at a distance of more than from 50 to 80 feet. We have further testimony as follows:

"*Q.* The fact that a spark carries more than 50 to 60 feet means what with reference to the condition of the engine?

"*A.* Well, it would mean that if the conditions of the ground where they light, that they would be liable to set something on fire.

"*Q.* You say a spark will carry 65 feet in an engine in good order. If it carries 200 feet, what does that show with reference to the netting in the engine?

"*A.* If it carried 250 feet, it would have to be some help to carry it that far.

"*Q.* There would have to be a hole in the netting?

"*A.* There would have to be some wind to carry it that distance.

"*Q.* With the netting or fire-arresting devices defective, would there be any limit to the distance that the fire would carry?

"*A.* I don't think there would.

"*Q.* That is, on an engine with defective devices for arresting sparks the sparks might carry how far?

"*A.* That is hard to tell; I couldn't say.

"*Q.* State whether or not they carry much farther than 80 feet.

"*A.* Yes; they would."

And also the following:

"*Q.* If an engine has a defective screen or defective spark-arresting device, state whether or not there is any limit to the distance that the sparks will fly, any reasonable limit.

"*A.* Well, as far as a limit is concerned, I could not place a limit upon the distance they would go. They may carry under a heavy wind farther than—farther at different times.

"*Q.* State whether or not they would carry a distance of 200 feet.

"*A.* With a defective spark-arresting device in the front end of a locomotive I should say that they would carry 200 feet with a strong wind, a medium wind.

"*Q.* Would it carry that far and set a fire?

"*A.* I should think so. I have known them to do so.

"*Q.* If an engine had holes in the screen, state whether or not they would carry as far as 250 feet.

"*A.* With a heavy wind I should judge they would."

We are unable to say in this case, as was said in the *Dolph Case,* that no question of fact was presented for the determination of the jury as to whether the engine and its appliances were in proper condition. The case

upon this point falls within the reasoning of the *Pennsylvania Fire Ins. Co. v. Railroad Co.*, 184 Mich. 375 (151 N. W. 578), and the cases therein cited.

The third and last point argued by counsel for defendant is that the court erred in denying a motion for new trial, on the ground that the verdict was against the great weight of evidence. While the evidence in the case, both upon the question of setting the fire and the condition of the engine, is such as to raise a question of fact for the determination of the jury, we are of opinion that the verdict should have been set aside by the trial judge because it was contrary to the great weight of evidence. We are led to this conclusion by a consideration of the following facts: The barn was located at a comparatively great distance from the railway track; there had been frequent showers the day prior to the fire; no other fires had been set in the vicinity, and the engine in question had never before been charged with setting fire. The evidence as to the state of repair and condition of the engine on the morning the fire was set was very full and convincing.

From a careful examination of the entire record, we have concluded that a motion for a new trial should have been granted. *Brown* v. *Railroad Co.*, 183 Mich. 574 (149 N. W. 1031).

Judgment reversed.

STONE, C. J., and KUHN, STEERE, and PERSON, JJ., concurred with BROOKE, J.

MOORE, J. I think the case should be affirmed.

OSTRANDER and BIRD, JJ., concurred with MOORE, J.