HUSTINA v. INDIAN REFINING CO.

BOUNDARIES—EJECTMENT—ASSUMPTION OF SURVEYOR—EVIDENCE—
GREAT WEIGHT OF EVIDENCE—NEW TRIAL.

In ejectment proceedings, where plaintiff's claim that defendant's building encroached upon his lot was supported only by the testimony of a surveyor which was based upon his assumption that his starting point was correct, although he admitted there was nothing in the original plat to show where to start from or any witness trees,

and defendant's claim that its building was at least 16 inches south of the line of an old boundary fence between its lot and plaintiff's was supported by the positive testimony of ten witnesses, a verdict for plaintiff, *held*, to be against the great weight of the evidence.

Error to Oakland; Covert (Frank L.), J. Submitted April 15, 1920. (Docket No. 85.) Decided June 7, 1920.

Ejectment by George Hustina against the Indian Refining Company. Judgment for plaintiff. Defendant brings error. Reversed.

*Geer & Martin,* for appellant.

*A. Floyd Blakeslee,* for appellee.

CLARK, J. Defendant reviews a judgment upon verdict in favor of plaintiff in an action of ejectment, asserting that there was error in the denial of defendant's motion for a new trial on the ground that the verdict was against the great weight of the evidence. Plaintiff was the owner of lot 4, Baldwin's addition to the city of Pontiac. The lot was on the west side of Linfear street. The plat of the addition indicated that the lot had a width or frontage on the street of 196 feet. Its length approximated 900 feet. The side lines of the lots will be treated as running east and west, which is substantially correct. On the south, lot 4 is adjoined by lot 5, of which defendant was a tenant in possession. Defendant erected a building and plaintiff claims that the building encroaches upon his lot, that the northwest corner of the building is on the line between the lots and that the northeast corner of the building is 27 inches north of the line. Plaintiff testified that he did not know where the line was. In plaintiff's behalf a surveyor was then sworn who stated that he determined the

north line of lot 4 from some old fence posts there found and stated:

"Part of the way the ruins of an old fence, the posts, part of them remained, so it was easy to pick up the line from end to end.  The railroad track crossed diagonally about in the center of lot 4.  The larger part of the posts on the north line were on the east side of the track, but on the south line a part of them, about half of them, were on the west side.    *    *    *

"*A.* On the north side of the lot I found seven posts along there at intervals, along the line.

"*Q.* And I will ask you if you found any at the intersection of the north line and Linfear street?

"*A.* Yes, sir; very good post there.  The front fence of the lot is attached to that post, also the north fence, fence running to the north along the north line and along the street, the two intersect at that point.

"*Q.* And I will ask you if that is the monument from which you started your measurements along the street?

"*A.* Yes, sir; after verifying it from the other posts along the line.    *    *    *    I think I had a drawing from the original plat of the land, because I went and found the original plat of the land so as to know how large the lot was.  That is, the original plat that was made by Baldwin.  That original plat did not show me anything where to start from or what the witness trees were.  Plats never have stakes in every place and at every corner, and if they do have they are wooden stakes that would disappear in a few years.  As far as the map was concerned, there was the drawing and the length of lines; that was all.    *    *    *

"*Q.* Now, when and where and by whom was this post put where you started to measure along the west side on Linfear street?

"*A.* The original boundary fence once included the entire lot.

"*Q.* When was that put in there?

"*A.* I have no means of knowing, except it was very old and nearly all gone.  I do not know by whom it was put there.  I did assume that corner was the original corner of lot 4."    *    *    *

Language used in *Fisher* v. *Dowling*, 66 Mich., at page 371, is applicable here:

"In this case, moreover, the surveyor gave no testimony indicating that he started correctly, or that his survey was such as should bind anyone. We have had frequent occasion to condemn the assumptions of surveyors in determining lines and landmarks according to their own notions. They have no such right, and their assumptions are not lawful."

See, also, *Stewart* v. *Carleton*, 31 Mich. 270, and *Diehl* v. *Zanger*, 39 Mich. 601.

There had been between the lots a line fence of posts and wire the remaining parts of which were largely removed when defendant erected its building. Of this fence it was said: "Twenty-one years ago it was quite an old fence"—"it had been kept in same location" and "it was there to indicate the line between lots 4 and 5." We think it is not disputed that by determining the line and location of this fence the boundary line between the lots will be established. Toward the back of the lots several posts of the fence in part remained. Plaintiff claims that the building was projected across this fence line to the extent above mentioned. Defendant contends that the north line of the building is 16 inches south of the old fence line. Plaintiff's witness, the surveyor, in January when the snow was from one to two feet deep attempted to determine the line of the fence. He testified that he measured from a post of the north fence of lot 4, which he assumed to be the correct line, south along the west side of Linfear street 196 feet, and there found, in the earth and grass, the end of an old post which he lined up with remains of other posts toward the back of the lot, some of which he found by digging, and thus reached the conclusion that defendant's building was across the fence line and upon plaintiff's lot as claimed. The surveyor further testified that he went over this line again in March and verified his conclusion. Defendant had positive testimony of 7 men who assisted in constructing the build-

ing, that the north wall of the building had been placed 16 inches south from the old fence and that the building was at least 16 inches away from the old fence line. Another witness who had known the fence for 10 years and had torn it down testified that the fence line was 17 inches north of the north line of the building. Other witnesses, two of whom had been familiar with the fence for 17 and 21 years respectively, from broken ends of fence posts found in the earth, from parts of the fence remaining and from a standing tree which had been used as a post of the fence and in which pieces of fence wire were embedded, determined and testified that no part of defendant's building was upon plaintiff's land. The verdict is against the great weight of the evidence. *Hintz* v. *Railroad Co.*, 132 Mich. 305; *In re McIntyre's Estate*, 160 Mich. 117; *Brown* v. *Railroad Co.*, 183 Mich. 574; *Barger* v. *Bissell*, 188 Mich. 366; *Malloy* v. *Railway Co.*, 192 Mich. 344; *Miller* v. *Railway*, 200 Mich. 388.

Judgment is reversed with costs and a new trial granted.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.