HUSTINA *v.* INDIAN REFINING CO.

1. BOUNDARIES — FENCE ERECTED OVER 15 YEARS DETERMINES BOUNDARY IN ABSENCE OF MONUMENTS. .
   Where the original monuments marking the boundary between two city lots had disappeared, a fence between the lots which had existed for more than 15 years is *held*, to be determinative of the line.
   222—Mich.—24.

2. SAME — EVIDENCE — TESTIMONY BASED ON ASSUMPTION INADMISSIBLE.

> Testimony by a surveyor and other witnesses as to the boundary based on the assumption that old posts set in muck land were on the line, although some of them were lying down or leaning over, and that the fence when it was standing was in a straight line, *held*, inadmissible.

3. SAME—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

> Where all of the positive testimony as to the location of the boundary supported defendants' contention, and the jury in finding for plaintiff must have wholly disregarded the testimony of a large number of unimpeached witnesses, the verdict will be set aside as against the great weight of the evidence.

Error to Oakland; Gillespie (Glenn C.), J. Submitted January 3, 1923. (Docket No. 30.) Decided March 22, 1923.

Ejectment by George Hustina and another against the Indian Refining Company. Judgment for plaintiffs. Defendant brings error. Reversed.

*Geer, Martin & Neudorfer*, for appellant.

*A. Floyd Blakeslee*, for appellees.

McDONALD, J. This action is in ejectment and involves a strip of land on the boundary line between lots 4 and 5 of Baldwin's addition to the city of Pontiac. From a judgment entered on a verdict for the plaintiff, the defendant has appealed. On a former trial plaintiff also recovered a judgment which was reviewed and reversed by this court in 210 Mich. 537, where the facts are fully stated. It was there held that the verdict was against the great weight of the evidence. The record in the instant case presents the same question raised by motion for a new trial, exceptions and assignments.

The plaintiffs are the owners of lot 4. The defendant is the lessee of a portion of lot 5. It is the claim of the plaintiffs that the defendant erected a building on lot 5, one corner of which projected over the line of lot 4 to the extent of 2.85 feet. Lot 5 lies south of lot 4. The defendant denies that any part of the building extends over the line of lot 4, but claims that the nearest part of the foundation is 18 inches south of that line.

It is conceded that the question in issue is the boundary line between lots 4 and 5. All of the original monuments marking this line are gone but there was an old fence between the lots which had existed for more than 15 years, and which was torn down at the time the building was constructed. As the original monuments have disappeared the location of this fence is determinative of the line.

To maintain the issue on their part the plaintiffs produced five witnesses, one of whom was a surveyor. None of these witnesses except the surveyor made any measurements. None of them knew where the old fence was. Those who remembered it had only casually observed it. They based their judgment on certain old posts which they assumed to be on the old line. The uncertain character of this testimony is well illustrated by the admission of the witness Ziedick, who, after testifying that the northeast corner of defendant's building encroached on plaintiffs' lot to the extent of three or four feet, said on cross-examination, "I never made any measurements, the fence might have been over three feet, from where in my judgment I think it was, I don't think it was over ten feet."

The railroad crosses lots 4 and 5 diagonally somewhere near the center of the lots. The only portion of lot 5 owned by the company is east of its right of way. The land on the west is low and swampy. The

witness Lenhardt, who made a survey for the plaintiffs, testified that when he was there part of it was under water, that there was a line of posts over in the swamp, that he knew posts set in that kind of soil did not always stay in line, that some of the posts were standing upright and some were lying down or leaning over.    Assuming that about 50 per cent. of these posts were on the line between lots 4 and 5 westerly of the railroad, he ran his lines with the result that he found the building encroached on plaintiffs' lot 2.85 feet.    Referring to this on cross-examination, the witness testified:

"*Q.* Well, how did you know, how did you know in this soft mucky soil, that these posts which were over farthest were not on the original or on the true line, how did you know?

"*A.* I was not there when the fence was built.

"*Q.* And, of course, you don't know, that's why I am asking you this question.    Now, you found several posts there in mucky soil, which had been there, as you think, for some time, and you took those, assuming those were on the true line, didn't you, in sighting through?

"*A.* Yes, sir."

This testimony was evidently admitted on the theory, supported by the testimony of other witnesses for the plaintiffs, that the line fence when it was standing was in a straight line from one end of the lot to the other.    The surveyor also testified to measurements made on the basis of the original plat.    For these he had no fixed starting point.    There was no definite monument shown by the plat.    Counsel for the defendant objected to the testimony of this witness and later made a motion to strike it all out.    The motion should have been granted.

See, *Hustina* v. *Refining Co., supra,* and cases therein cited.

All of the positive testimony as to the exact location

of the old boundary fence in relation to the position of the building comes from the defendant's side of the case. The man who had charge of the construction of the building, the carpenter, the teamster, who did the excavating, the mason and three others who worked on the building, all saw the old fence easterly of the right of way and testify that the northeast corner of the building was placed about 18 inches from plaintiff's line. Other witnesses, 11 in all, gave positive testimony as to the location of the line fence. These witnesses were in no way impeached, yet the jury must have wholly disregarded their testimony in finding a verdict for the plaintiffs. The verdict is contrary to the overwhelming weight of the evidence. The language used in *Bernard* v. *Grand Rapids Paper Box Co.*, 170 Mich. 238 (42 L. R. A. [N. S.] 930), is applicable to this case:

"Under our practice, this court must exercise its judgment as to the weight of the evidence in the instant case. We are satisfied upon this record that the verdict was against the clear weight of the evidence. We do not see how any other conclusion is possible. The instant case is of that class occasionally before the courts where, for some reason, not always apparent, justice has miscarried, and a verdict has been found against the weight of the evidence. *Brassel* v. *Railway Co.*, 101 Mich. 5; *Gregory* v. *Railway*, 138 Mich. 368; *Crowe* v. *Railroad Co.*, 142 Mich. 696."

Judgment is reversed and a new trial granted. Defendant will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.