44 P.(2d) 489

**GILBERT v. NEW MEXICO CONST. CO. et al.**

**No. 3903.**

Supreme Court of New Mexico.

Feb. 26, 1935.

Rehearing Denied May 13, 1935.

W. A. Keleher, of Albuquerque, and J. M. Hervey, of Roswell, for appellant.

G. L. Reese and C. R. Brice, both of Roswell, for appellee.

WATSON, Justice.

Plaintiff, J. C. Gilbert, sued the city of Roswell and the New Mexico Construction Company for a fire loss upon his residence, claiming that it was occasioned by low pressure in the city's water mains, insufficient to enable firemen to extinguish the flames. Trial to the court resulted in a judgment of $3,700 against defendant construction company, and it has appealed.

Appellant was in pursuit of a paving contract with the city. Though informed of the location of the water mains, it so operated its power shovel, in excavating, as to break a main. This occurred at 10 o'clock a. m. Appellant immediately notified the city, which undertook the necessary repairs. With ordinary diligence the break could have been repaired in two hours. It remained unrepaired until about 6 o'clock p. m.

At about 5:30 p. m. appellee's house caught fire. When discovered, if water pressure had been normal, a garden hose would have been sufficient to extinguish the flames. The firemen, with their equipment, were on the spot within two to five minutes after discovery of the fire. If the pressure had been normal it

would have extinguished the fire without appreciable damage.

To facilitate the repairs, the city water superintendent directed the city engineer to reduce pressure to twenty pounds, the normal being sixty. The firemen, finding the pressure insufficient, the operator of the pumps was requested for more. He declined to increase it until so ordered by the water superintendent. It was increased later, and the fire extinguished, after damage of $3,700 to appellee's house, shrubbery, trees, lawn, and flowers.

The court below found the foregoing facts, and held that appellant's negligence was the proximate cause of appellee's injury. It held that the city's negligence was a contributing cause, but that the city was not legally liable to appellee.

The first of appellant's contentions which we need notice is that its breaking of the main was not negligent. The argument is not impressive, and is based on some facts which the court refused to find. The theory is that the contract must have contemplated the use of machinery such as was used, and that, in excavating with such machinery, pipes near the required grade are likely to be broken. We find in this no justification for saying, as matter of law, that thus breaking a pipe, the location of which is known, is not negligence.

It is next contended that the breaking of the pipe was not, in any sense, a cause of the damage. It is claimed that the repairs were complete before the fire alarm was given; that the broken main had ceased to affect the situation; and that the low water pressure was attributable solely to the failure of the city to restore it immediately upon completion of repairs, or at least when the alarm was given. This depends on nice calculation as to the time of events. It attacks the findings that the fire occurred at about 5:30 o'clock, and that the repairs were completed at about 6. We doubt if the evidence brought to our attention would warrant disturbing these findings.

It is apparent that the repairs were completed and the fire discovered at about the same time. An attempt to reduce events to an exact and accurately timed sequence would no doubt fail, and does not seem warranted. We think that a few minutes' delay by the city in restoring pressure after appellant had made it necessary to reduce it, would not enable us to say, as matter of law, that the primary negligence had spent its force.

It is also contended that, even with the break unrepaired, sufficient pressure could have been furnished, at slight damage, to have enabled the firemen to accomplish their task. The trial court refused to find that, notwithstanding the break, "the water could have been turned on at the * * * plant when the * * * telephone communication was received from the scene of the fire * * * and sufficient pressure could have been forced to plaintiff's residence to have extinguished the fire." Appellant points to evidence which might have required the court to find that the mere existence of the break would not prevent putting the hydrant pres-

sure to fifty pounds. It is not shown how long, the break existing, it would require to advance pressure from twenty pounds to fifty. After the fire broke out, time was important. Assuming that there is merit in the legal contention, we find no error in refusing the proposed finding.

■ Appellant's most important and interesting contention is that the breaking of the water main was not the proximate cause of the fire loss. The first aspect of its proposition is that such cause, regardless of any intervening negligence of the city, is but remote.

We find no contention between counsel as to the general rule of proximate cause. So far as definition goes, all seem content with the round statement found in Lutz v. Atlantic & Pacific Ry. Co., 6 N. M. 496, 30 P. 912, 16 L. R. A. 819, and later in Maestas v. Alameda Cattle Co., 36 N. M. 323, 14 P.(2d) 733, 735: "The 'cause which, in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred.'"

A general survey of appellant's argument discloses these grounds for asserting the remoteness of this cause: The fire itself was the proximate cause of appellant's loss; appellee had no right to this municipal fire extinguishment service capable of supporting an action for interference with it; appellant could not reasonably have anticipated that its act would produce the injury so long subsequently.

The first contention we deem too well settled against appellant to require more than citation of some of the decisions. In the leading case the court answered it thus: "The law regards practical distinctions, rather than those which are merely theoretical; and practically, when a man cuts off the hose through which firemen are throwing a stream upon a burning building, and thereupon the building is consumed for want of water to extinguish it, his act is to be regarded as the direct and efficient cause of the injury." Metallic Compression Casting Co. v. Fitchburg R. R. Co., 109 Mass. 277, 12 Am. Rep. 689.

Many later decisions have taken this view, and it seems to be denied nowhere now. Kiernan v. Metropolitan Construction Co., 170 Mass. 678, 49 N. E. 648; Clark v. G. T. W. R. Co., 149 Mich. 400, 112 N. W. 1121, 12 Ann. Cas. 559; Little Rock T. & E. Co. v. McCaskill, 75 Ark. 133, 86 S. W. 997, 70 L. R. A., 680, 112 Am. St. Rep. 48; Hurley v. M., K. & T. Ry. Co., 170 Mo. App. 235, 156 S. W. 57; Houren v. C., M. & St. P. Ry. Co., 236 Ill. 620, 86 N. E. 611, 20 L. R. A. (N. S.) 1110, 127 Am. St. Rep. 309; C., C., C. & St. L. Ry. Co. v. Tauer, 176 Ind. 621, 96 N. E. 758, 39 L. R. A. (N. S.) 20; Hanlon Dry Dock & S. Co. v. So. Pac. Co., 92 Cal. App. 230, 268 P. 385; Erickson v. G. N. Ry. Co., 117 Minn. 348, 135 N. W. 1129, 39 L. R. A. (N. S.) 237, Ann. Cas. 1913D, 763; Luedeke v. C. & N. W. Ry. Co., 120 Neb. 124, 231 N. W. 695; Phenix Ins. Co. v. N. Y. C. & H. R. R. Co., 122 App. Div. 113, 106 N. Y. S. 696; C. & F. Lbr. Co. v. D. & R. G. R. Co., 17 Colo. App. 275, 68 P. 670.

■■ The second contention merits fuller discussion. It is well established that a municipality's fire extinguishment service is afforded as a governmental function, not as matter of legal right, and that the city is not liable to the householder for refusal or failure to render it effectually or at all. So, it is claimed, there is no privity—right on the part of appellee and duty on the part of appellant—to support this action.

Notwithstanding the city's immunity, which all recognize, the line of decisions just cited declares the liability of the third party who has wrongfully prevented enjoyment of the service. The Supreme Judicial Court of Massachusetts said: "While it is true * * * that there was no obligation upon the city to extinguish the fire, it does not follow that the plaintiff was not deprived of anything to which she had a legal right if the defendant obstructed the firemen in getting water from the hydrant. She had a legal right to have firemen get the water if they chose to do so from a supply provided especially for that purpose." Kiernan v. Metropolitan Construction Co., supra.

Not all of the cases cited mention, but all necessarily involve, the particular question now under discussion.

Appellant contends, however, that in all of these cases the service was actually being availed of at the time of the wrongful act, or that the need for it had arisen at least. And this we shall presently accept as a fair statement. In the case at bar, appellee's need arose eight hours later. Conclusive effect is claimed for this distinction.

We have not before cited Concordia Fire Ins. Co. v. Simmons Co., 167 Wis. 541, 168 N. W. 199, 200; for in that case the wrongful act, which put the city's intake pipe out of commission, preceded by one week the householder's need of the service. That decision affords firm support for the judgment in this case. Appellant contends that it stands alone and should not be followed. More important, we have here long stood divided as to its significance and effect. It thus requires careful analysis.

We think the effect of the decision plain. It upheld the complaint. That complaint disclosed, among its other facts, that, when the negligent act was done, the plaintiff was not using the service and did not need it until a week later.

We think the ground of the decision equally plain. Meeting the very contention here made, that plaintiff's lack of right to this service was fatal to an action for interference with it, the court said: "* * * So long as the householder or inhabitant of the city is in the position to receive, and the municipality is ready and willing to continue such service, the person who interferes with such relationship between the municipality and its inhabitant, and thereby causes injury to such householder or inhabitant, must respond for such damages as may be directly traceable to his interference as a proximate cause. It is not for a person who has interfered with such existing right or privilege to say that it is a mere gratuity on the part of the municipality, or that the municipality cannot be compelled to

continue such service or be held responsible for failure to do so. So long as the municipality is ready and willing to continue, and the householder or resident to accept, the benefit of such a water system service, the unlawful interruption thereof by a third person and consequent damage is a wrong for which the law affords a remedy."

That is but to say that readiness and willingness of the city to serve and of the householder to be served are the equivalent of actual present service, when testing the character of the householder's right. To put it a little differently: As between the householder and the city, there is lack of full-fledged legal right; but as between the householder and the interferer, there is a right in the former raising a duty of care by the latter; and this right rests upon readiness and willingness to serve.

But when we propose to follow this decision some of its theory is urged against us. It is pointed out that the Wisconsin Supreme Court considered that it was taking "one step further" than the courts of the country had previously taken. That evidently sprang from a realization that up to that time the courts had dealt with cases of present use or need only. The court put its own construction upon the theory of previous decisions thus: "But while such service is being actually rendered by a municipality as while a fire is going on and an immediate benefit is being received by a householder there can be no question but that, as to all third persons, there is then a substantial right and interest in the householder to such service which carries with it the further right to be protected against its invasion by third persons. At the moment such a right comes into existence there springs up at the same time a corresponding duty on the part of third persons not to unlawfully interfere therewith. For a breach of such duty by third persons there is a corresponding liability. This is recognized in many cases. Kiernan v. Metropolitan C. Co., 170 Mass. 378, 49 N. E. 648; Metallic C. C. Co. v. Fitchburg R. Co., 109 Mass. 277, 12 Am. Rep. 689; Clark v. G. T. W. R. Co., 149 Mich. 400, 112 N. W. 1121, 12 Ann. Cas. 559, 562."

The important fact is that the Wisconsin court mentioned this theory but to explode it. Yet, on this appeal, the exploded theory has assumed greater importance than the decision.

We have sought in vain in the three decisions cited in the Concordia Case, in all the decisions here cited, and in many others, for anything fairly to warrant such an appraisal of them. Nowhere do we find even the germ of the thought that the breaking out of a fire changes the service from a gratuity to a right.

A dictum of Mr. Justice White, dissenting in Mott v. Hudson River R. Co., 24 N. Y. Super. Ct. (1 Rob.) 585, 594, is relied on. That decision, for the last time in this country (1863), held the householder's loss too remote from the cause (severing a length of hose in use) to admit of liability. The dissenting justice remarked: "Cutting or destroying fire hose, provided for use by a community, when no fire existed, and the hose

was not in actual use at the time of the cutting, would not give a member of that community, whose house should afterwards be burned down, a right of action for damages caused by the destruction of his house, although it might be ever so probable or clear that if the hose had not been cut, its use would have enabled the owner of the house to extinguish the fire and save his property. The damages would in that case be too remote; that is, they would be so remote that other acts or negligences intervening might be chargeable, to some extent, with the disaster; and courts will not speculate in such cases, in order to determine whether any, or how much, of the damage is due to a particular act complained of."

This, of course, is a slender reed of authority. It is evident, moreover, that neither the majority nor the dissenting justice had in mind proximate cause as affected by the plaintiff's lack of legal right to the service. Further, as applied to a mere length of hose, the distinction is not without force. When hanging in the hose house, a serious result is hardly to be anticipated from its destruction. When actually conveying water to a burning building it is an immediately essential part of the service.

Up to the time of the Concordia Case, the decisions fall into two classes; severing hose, and blocking the firemen with the equipment from access to the fire. Neither of these wrongs has any lasting result. It is only the householder in present need of service who suffers. A more lasting impairment of the service, as in the Concordia Case, introduces

a new factor, it is true. Its bearing, however, is not on the relation of householder's right and third party's duty. It affects that other element of proximate cause, whether the result was reasonably to have been anticipated.

In following the Concordia decision, we do not admit that we are taking or that the Wisconsin court took a "step further" in principle. We merely make another application of principles long established.

Influenced by "practical distinctions, rather than those which are merely theoretical," the courts have come with great unanimity to uphold this kind of liability. It no doubt considerably broadened the field of proximate cause. It put quite a burden of care upon the negligent public in the interest of the innocently suffering public. Practical considerations and policy have thus perhaps triumphed over complete harmony of law.

However that may be, unless we would repudiate this result of vast judicial effort, it is now too late to entertain this objection of remote cause. On authority, we think it must be held that wrongfully interfering with the city's ability to serve invades a substantial right.

The taxpayer would deny that the service is a gratuity. The underwriter would affirm that it has substantial value as prospective security against fire loss. The city's nonliability is the same before and after the fire. The practical view is that the householder's right and the corresponding duty of care are fixed, not varying, factors. The idea that from the fire there "comes into exist-

ence" a new right and "springs up" a new duty, is fiction. If not pure fiction, it is a theory too technical to control these practical decisions. It was not through such fine reasoning that the courts arrived where we now find them in this class of cases. The right and the corresponding duty exist all the time. What the fire brings into existence is a cause of action. Until that event, there is of course no compensable injury.

Outside this particular field, cases may be found which lend support to appellant's contention. One such is Byrd v. English, 117 Ga. 191, 43 S. E. 419, 64 L. R. A. 94. It is strongly relied upon by appellant. It sustained a demurrer to a complaint based on negligence of a building contractor who, in excavating, broke wires of an electric company carrying power for the operation of plaintiff's printing plant. The court was unable to say, as matter of law, that the injury to plaintiff's business was not reasonably to have been anticipated. Yet it held that there was no liability except to the owner of the wires. Human affairs are so complicated, it was argued, that the law cannot undertake to compensate all who may be indirectly affected by an unlawful act. The court cited a few cases, particularly Kahl v. Love, 37 N. J. Law, 5, which, in effect, limit the tort-feasor's liability to the owner of the property injured, or to those to whom the former is immediately obligated by contract, or to whom he is otherwise under special duty.

The Byrd-English Case is freely criticized by the L. R. A. annotator, who cites numerous earlier decisions contrary to it in principle, some being in the line of decisions above cited.

Whatever privity of right and corresponding duty general principle may require to make a case of proximate cause, we consider it well settled that there is sufficient privity between the householder who has suffered preventable fire loss and him who wrongfully deprived him of the preventive service.

The view has found lodgment here that the case at bar is distinguishable from the Concordia Case, in that the city of Roswell was not ready and willing to serve appellee in his time of need. This we cannot admit. Unreadiness was due to appellant's act, and it cannot take advantage of its own wrong. Unwillingness there never was. It is claimed because of the finding that repairs could have been effected in two hours if there had been reasonable diligence. A finding is not to be construed as an abstraction, wholly apart from the evidence. Appellant's own picture of the city's efforts at repair shows them to have been instituted with reasonable promptness and to have been continuous. Misdirected as they may have been much of the time, their purpose was to restore service. They disclose willingness and negative unwillingness.

It is also thought that there is something in appellant's character as the city's instrument in its paving work—not as an independent contractor, it is said—to prevent its accountability for this negligence. This being a matter not urged by counsel, we refer to it with some hesitancy.

Well aware that the city's immunity extends to the servants or agencies through whom it may afford its fire extinguishment service, we know of no precedent and recognize no principle for invoking that immunity in favor · of this paving company. The servant's liability precedes, it is not ordinarily dependent on, the master's liability. If, on the principle of respondeat superior, this was the city's act of negligence, appellant is not aided. It was none the less its own act. When the water company fails to serve, the law, largely on grounds of public policy, regards the failure as the city's failure only. No such grounds exist when it is the paving company that interferes to prevent service. As we view it, appellant is here as much a third person or stranger as was the Simmons ·Company, defendant in the Concordia Case.

We find nothing illogical in the thought that this wrongful act, considered as the act of the city, is irremediable, while, considered as the act of its servant, if a servant, it is actionable. If there be disharmony in these results, it is a confusion to which authority plainly commits us. The matter seems simple. As between the city and the householder, the law recognizes no right and affords no legal remedy. As between the interferer and the householder, the law does recognize a right and gives redress. In reaching these results, "practical distinctions rather than those which are merely technical" have been considered, and public policy has had an important influence.

Leaving now this most interesting phase of the case, we pass to the third of the above-stated grounds on which it is urged that the negligent act was but a remote cause of the loss; that appellant could not reasonably have anticipated such a result.

Here is stated a recognized test of proximate cause. Maestas v. Alameda Cattle Co., supra. Undoubtedly it is a proper inquiry whether appellant anticipated this result or whether it may reasonably be. said that it should have been anticipated.

However, the question is one of fact; becoming one of law only when undisputed evidence discloses a case as to which reasonable minds could not differ. Cooley on Torts (4th Ed.) § 50. Thompson on Negligence, §§ 49, 161; C., C., C. & St. L. Ry. Co. v. Tauer, supra; Hurley v. M., K. & T. Ry. Co., supra; Nall v. Taylor, 247 Ill. 580, 93 N. E. 359.. And the question is not whether this particular loss, but whether loss of this kind, was or should have been anticipated. Houren v. C. M. & St. P. Ry. Co., C., C., C. & St. L. Ry. Co. v. Tauer, Hanlon Drydock & S. Co. v. Southern Pacific Co., supra; Thompson on Negligence, § 59.

Appellant expresses great concern for the consequences of sustaining this judgment. If appellant may be charged with a reasonable anticipation that the injurious results of its act would obtain for eight hours, why not for a week? Where is the line to be drawn? The answer must be that the line will be drawn where reasonable minds cannot differ.

The case furnishes a nice question of fact. Considering that full repair could have been made and service restored in two hours, ought appellant have anticipated impairment of service for eight hours? What degree of diligence on the part of the city might it reasonably rely upon? The fact finder has spoken. We could avoid what he has said only by ourselves saying that no reasonable mind could have reached that conclusion. This we think cannot be said properly in this case.

The other aspect of appellant's contention on proximate cause is that, even if its act could proximately have caused the injury, it did not in this case, because the chain of causation was broken by the intervening negligent delay of the city in making the repairs or in restoring pressure after completion of the repairs.

It is no doubt true that the injury to appellee might have been avoided by greater diligence or better directed effort on the part of the city. That does not in our opinion interrupt the natural and continued sequence of the original force. The city's negligence was passive merely. Cf. Citizens' Tel. Co. v. Prickett, 189 Ind. 141, 125 N. E. 193. It was not independent. The necessity for it to act at all arose wholly from appellant's act. In reason, one who sets a harmful force in motion should not be heard to defend against liability by the claim that another than the injured party might have prevented the injurious result by an active and timely intervention. The negligence of physician, surgeon, or nurse may intervene to aggravate an injury or to make it fatal. That will not sever the chain of casualty leading to him who made the treatment necessary. Thompson on Negligence, § 66. See, also, Early v. Burt, 134 Kan. 445, 7 P.(2d) 95. And if it could be questioned whether the city's negligence, being passive, is a cause set in motion by the original wrongdoing (Id. §§ 52, 53), the intervening cause may as readily be given an active character by conceiving it the act of the city in reducing the water pressure.

Appellant senses this weakness in its position, but thinks it cured by the legal fact that the city is not under liability to respond for its negligence. It is argued that the duty and necessity to repair the break was on the city, appellant having no control of the matter; that hence the direct cause of the injury was the manner of repair; and that if, after faulty repair, the break had recurred under pressure, appellant would have been under no liability.

We do not see how appellant can thus rid itself, as matter of law, of the primary liability. Having broken the main, damaged the city's property, and endangered appellee's, we cannot say that appellant has no concern or duty or liability with respect to the time or manner of restoring the main to service. If the city were not under a legal exemption, its negligence would be a concurring cause, we think. We do not consider that its nonliability changes the situation.

Ætna Insurance Co. v. Boon, 95 U. S. 117, 130, 24 L. Ed. 395, is a fruitful source in this connection. Mr. Justice Strong there says:

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

And he quotes thus from a leading case (Milwaukee & St. Paul R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256):

"The inquiry must always be whether there was any intermediate cause *disconnected from the primary fault*, and self-operating, which produced the injury."

Appellant cites Newman v. Steuernagel, 132 Cal. App. 417, 22 P.(2d) 780; Cole v. German Savings & Loan Soc. (C. C. A.) 124 F. 113, 63 L. R. A. 416; Curran v. Chicago & N. I. R. Co., 289 Ill. 111, 124 N. E. 330; New England Fuel & Transportation Co. v. City of Boston (D. C.) 257 F. 778; Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117; Lewis v. Flint & P. M. Ry. Co., 54 Mich. 55, 19 N. W. 744, 52 Am. Rep. 790. None of these decisions deny, some of them expressly admit, the principle of Ætna Insurance Co. v. Boon, supra. All of them involve an efficient intervening force, independent of the original.

Before leaving proximate cause, another matter should perhaps be mentioned. The findings disclose that the city's system of mains was equipped with shut-off valves, and that on the occasion in question they were found useless from corrosion, due to the city's negligence. Except for this, we take it, the effects of the break would have been so localized that in other places, including the situs of the fire, water pressure would have been maintained.

Appellant makes no use of these facts in argument other than as partly explanatory of the delay in making repairs and of the necessity of reducing pressure throughout the city. We readily perceive, however, that these facts, in connection with others not shown, might have been of importance in the case, at least in the trial court. If it had been shown, either that appellant knew of the shut-off equipment, or that such equipment was in universal or general use, it could more forcefully have urged that the injury occurring eight hours later, and in a different part of the city, was not reasonably to have been anticipated.

In cases of this sort it has often been urged that the quantum of injury is so speculative as not to support damages. That contention is expressly met in Houren v. Chicago, M. & St. P. Ry. Co.; Hurley v. Missouri, K. & T. Ry. Co.; Hanlon Drydock & Shipbuilding Co. v. So. Pac. Co., supra, and in Luedeke v. Chicago & N. W. Ry. Co., 120 Neb. 124, 231 N. W. 695. The inherent difficulty has of course been surmounted in all cases where damages have been awarded for acts preventing or interfering with the extinguishment of fires. We cannot doubt that there was sufficient evidence in this case to warrant the court in undertaking to estimate what part of the total fire damage would

have been avoided but for appellant's negligence. Nor can we say that the evidence fails to support his finding that, except for lack of pressure, the damage would have been negligible.

We gather that the damages allowed are liberal. Appellant contends that they are at least $500 too large. This is based upon the claim that some allowance should have been made for obsolescence. Appellant did not fortify itself on this point by requested findings; so we consider it not incumbent upon us to pursue it.

The judgment will be affirmed, and the cause remanded. It is so ordered.

SADLER, C. J., and JOSEPH L. DAILEY, District Judge, concur.

HUDSPETH, Justice (dissenting).

The fire protection service rendered by a city to its inhabitants has generally been classed as a gratuity. If so regarded, the plaintiff, at the time of the injury to the water main, had no right which could be defended before a legal tribunal. The courts have properly held that one has a cause of action against a third party who wrongfully interferes with the city's fire fighters when they are endeavoring to extinguish a fire destroying his property. The Wisconsin court in the Concordia Case went further, I think erroneously, and held the trespasser liable who injured the water system a week before the fire occurred. The opinion of the court in the case at bar goes still further and holds the servant of the city liable for fire loss suffered by the householder due to accidental injury to the city's water main while engaged in the city's business. And this too, notwithstanding the city's negligence in consuming eight hours in repairing the main, which the court found should have been repaired in two hours.

The effect of this decision will be far reaching. It establishes the rule that a municipality, the only power with authority or control necessary to repair its water system, may negligently take four times as long as the period required to make the repairs without such negligence constituting such intervening efficient cause as would interrupt the primary cause of the injury. As "practical considerations and policy" seem to be the touchstones of the majority opinion, it may be well to consider to what results these holdings will lead. A motorist who accidentally broke a hydrant might do all that he could do toward curing the wrong, i. e., settle with the city for the injury to its property, and still be held responsible for a million dollar fire loss starting hours after the injury should have been repaired. He would have no power to repair the hydrant, and if he paid the city for the damage to its property, that would not relieve him from liability to the property owner or insurance company suffering fire loss, due to the broken hydrant, under this newly found right in the householder.

Another result will be to increase the cost of public works of municipalities. In fact the appellant in this case may find that it will be benefited by this decision, in that it

eliminates the competition of poor men. Only the strong financially will be able to procure surety bonds where the liability may run into hundreds of thousands of dollars. One result of the decision will be to partially transfer from the property owner or insurance company to the taxpayer of the city the burden of fire risk, since the contractor or bonding company will reckon the risk of injury to the city's water system and its concomitant liability to others, and add this item to the estimate of cost, before entering into a contract with the city. The taxpayer will foot the bills in the end.

This decision breaks so much new ground that it may be said to establish a new policy, and while it may be in keeping with the spirit of the day, it is of such doubtful wisdom, and so far reaching, that the court, in my judgment, would better leave the making of such a change in policy to the Legislature.

For the reasons stated I dissent.

BICKLEY, Justice (dissenting).

I am in accord with the view of Mr. Justice HUDSPETH that the judgment in favor of the appellee against the appellant ought not to stand, and much for the same reasons. Because of the importance of the question involved, I deem it proper further to set forth my views.

The prevailing opinion recognizes as sound the proposition that a municipal corporation, which has assumed to protect against fires by installation of waterworks system and fire department, is not liable for fire losses due to lack of or insufficient water; I concede that ordinarily this is so. I concede that while a municipal corporation is actually rendering the service of extinguishing a fire, and an immediate benefit is thus being received by a householder, as to all third persons, there is, then, a substantial right and interest in the householder to such service which carries with it the further right to be protected against its invasion by third persons, and that at the moment such a corresponding duty on the part of third persons not to unlawfully interfere therewith. For a breach of such duty by third persons there is a corresponding liability. These propositions are stated by the Wisconsin Supreme Court in Concordia Fire Insurance Co. v. Simmons Co., 167 Wis. 541, 168 N. W. 199, 200.

However, the Wisconsin Supreme Court recognizing this rule, carried it "one step further," declaring: "We see no good reason why this rule should not be carried one step further, and, as applied to the facts stated in this complaint require us to hold as we now do that so long as the householder or inhabitant of the city is in the position to receive, and the municipality is ready and willing to continue such service, the person who interferes with such relationship between the municipality and its inhabitant, and thereby causes injury to such householder or inhabitant, must respond for such damages as may be directly traceable to his interference as a proximate cause."

Conceding for the moment that going this "one step further" might be warranted in some cases, I am unwilling to enlarge the rule

and to apply the exceptional doctrine there announced, any further than has the Wisconsin Supreme Court.

The appellant has been able to urge that this case stands alone and should not be followed. I am unwilling to apply that decision to a case which is so plainly distinguishable.

In the Wisconsin case the interferer was a stranger and a trespasser upon the city's property. It was "an unwelcome guest, an invader, an interloper." Highway Trailer Co. v. Janesville Electric Co., 187 Wis. 161, 204 N. W. 773, 778. Here the alleged interference with the city fire department was by the city itself through its servant, the construction company, working in its street department under "control and direction of the work in all respects" of the city engineer who in turn was "under the authority and direction of the City Council." It was employed to do the work embraced in its contract "so as to conform to the directions of the City Engineer * * * as to the mode of doing the same not inconsistent with the said specifications." The contract of employment contained provisions which are thus described in plaintiff's complaint, and the contract was introduced in evidence in support thereof:

"When the contractor is not present on the work, orders will be given to the superintendents or overseers in immediate charge thereof by the City Engineer, and shall by them be received and obeyed; and if any person employed on the work shall refuse or neglect to obey the instructions of the City Engineer in any way relating to the work; or shall appear to said Engineer to be incompetent, disorderly or unfaithful, he shall, upon the requisition of said Engineer, be at once discharged and not again be employed on any part of the work unless re-instated with the consent of said Engineer.

"The contractor will be required to observe all city ordinances, in relation to obstructing the streets, maintaining signals, keeping open passageways and protecting the same where exposed; and generally to obey all the laws and ordinances controlling or limiting those engaged on the work; and the contractor hereby expressly agrees to indemnify and save harmless the City of Roswell from all suits and actions of every nature and description brought against said City for or on account of any injuries or damages received or sustained by any party or parties through the negligence or carelessness of the contractor or its employees, or by or from acts of the contractor or its servants or agents in the performance of their duties in doing the work herein contracted for, in consequence of any negligence in making said improvements, or in any improper materials used in its construction or by or on account of any acts of omissions of the said party of the first part, its servants or agents."

"4. That by the terms of said Contract, as heretofore set out, the City of Roswell retained control and direction of the work through its engineer, and the contractor assumed all responsibility for damages sustained to persons or property due to the carrying on of the work, or by or on account of any act or omission of the contractor, or of his agents, servants or employees."

The complaint also alleged: "12. That by the terms of section 3660 of the New Mexico Code of 1915 the City Council of the City of Roswell is given the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within such city, and is required to keep them open and in repair and free from nuisances. That the City of Roswell, although supervising said work through its engineer, and although required to keep such streets in repair and free from nuisances, and thereby protect the public, negligently permitted such excavations to be made, and failed to see that the public was protected in the matter of such excavations so that its water mains would not be injured or destroyed, and thereby cause the danger of the destruction of property by fires. That the defendant, New Mexico Construction Company, by the terms of said contract agreed to be responsible for the loss of property by its negligence in performing the terms of said contract."

The record discloses that plaintiff's stated cause of action was based upon the theory that the city was liable for the consequences of the breakdown of its water system because its street department had violated the statute referred to in the complaint making it unlawful for the city to permit nuisances to be created in its streets and therefore guilty of negligence per se. There is nothing in the evidence to show any negligence otherwise. He sought to hold the servant liable because in its contract of employment it had "agreed to be responsible for the loss of property by its negligence in performing the terms of said contract."

When the city answered it alleged by way of defense that the construction company was an independent contractor, and that the city was not liable for its negligence. Plaintiff's reply denied this. Plaintiff now argues that the construction company was an independent contractor. If the trial court rendered its decision upon the theory that the construction company was an independent contractor, he went outside the issues made by the pleadings.

Appellant is entitled to a reversal unless the servant of a municipal corporation working under the direction and control thereof is liable notwithstanding the immunity of its master, the corporation.

From an annotation entitled "Personal liability of municipal officer or employee for negligence in performance of duty", 40 A. L. R. 1358, 53 A. L. R. 381, it appears that liability will not attach to the officer or employee even for misfeasance, except in the discharge of duties purely ministerial, and that if he is in the performance of public duties no liability will attach for the misfeasances because he is acting only as a representative of the government for the benefit of the public.

In Wood v. Boone County, 153 Iowa, 92, 133 N. W. 377, 39 L. R. A. (N. S.) 168, Ann. Cas. 1913D, 1070, it was said that it would be an anomalous doctrine that would exempt a municipal corporation itself from liability for the doing of a lawful act in a negligent manner, on the ground of its compulsory agency on behalf of the public welfare, and at the same time affix liability upon the agent for precisely the same act done under express

authority. The act there complained of was one of nonfeasance; the failure to furnish relief to a pauper.

If the defendant city of Roswell was exempt from liability for injury to a member of the public who suffered a hurt from its failure to furnish fire extinguishing service because rendition of such service is a public or governmental function, even though its servant (appellant) employed in another department in paving its streets, negligently participated in bringing about the condition which left unaltered, rendered it unready to render such service, how can it be said that the participating servant does not enjoy the same immunity?

Suppose appellant had by contract with the city been engaged in furnishing water to the city for fire protection and also engaged in paving the city streets, and, while doing the paving job, had broken one of its own water mains with the result that no water under pressure could be supplied for fire extinguishment service? Apparently such water company would also be exempt from liability to a householder who suffered a loss on account of failure of the company to supply water to extinguish the fire. Braden v. Water Supply Co., 18 N. M. 173, 135 P. 81, 82.

It does not seem that in the Braden Case, the question of whether the failure of the water company to furnish water was due to negligence or not made any material difference. It was said that "the contracting company is not chargeable with any greater liability than the city itself." In order for the agent or servant of the municipality engaged in a public work to be held liable for injury to a third person on account of his acts while performing his official duties, it must appear that he owed some duty to the injured person not owed to the public generally, and that the breach of such duty was an act of misfeasance or malfeasance and not merely one of nonfeasance, and the duty to the injured *person must have existed at the time the act of misfeasance or malfeasance was committed.*

In National Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621, it was decided that even the servant of a private individual not engaged in a public work in the absence of collusion or fraud, and where there was no privity of contract, could not be held liable to a stranger injured through his act unless the act is one *immediately dangerous* to the lives of others. This is in line with the dictum of Mr. Justice White in the Mott Case, that, "when no fire existed, and the hose was not in actual use at the time of the cutting," there would be no liability since the damage would be too remote. It seems anomalous that the defendant city of Roswell may be exempt from a liability in the case at bar although its servant, the appellant, created the condition complained of and under the supervision and direction and control of the city council through its city engineer, and yet the agent or servant be held liable for precisely the same act done under express authority. Of course, I do not mean that the city council expressly authorized its agent (appellant) to break the water main. But it knew as well as appellant the hazards of digging in the street with a heavy digging and

excavating machine. It saw the machine working in such operations under its own direction for several months, with power to bring about the discharge of incompetent workmen, and no protest was made. The complaint contains many allegations of control and supervision by the city of the appellant's operations. It seems to me that our Legislature endeavored to bring order out of this confusion by the enactment of chapter 67, Sess. Laws 1905 (section 90-623, Comp. St. 1929): "No personal action shall be maintained in any court of this state against any member or officer of any municipal corporation in this state for any tort or act done, or attempted to be done, by such member or officer, when done by authority of such municipal corporation, or in execution of the orders thereof; in all such cases the municipal corporation shall alone be responsible; and any such member or officer may plead the provisions of this section in bar of such action whether the same be now pending or hereafter commenced."

This enactment was before this court in Baca v. City of Albuquerque, 19 N. M. 472, 145 P. 110, where it was held that such section does not relieve the member or officer of such corporation from liability for tortious acts done by him in the discharge of his official duties and cast such liability upon the city, "unless such tortious act is done by authority of such corporation, or in execution of its orders." I am not certain as to the scope of the holding in this case. The court illustrates as follows: "Suppose the city council should instruct the chief of police to tear down a building, or to close a ditch, and pursuant to such order he should do so. In such a case the statute says he shall not be individually liable for such act, but that the liability shall rest upon the city. The city authorizes the closing of a street, and under such authority the marshal proceeds to do so. The marshal would not be liable, as he acted under the authority of the city, but the city would be liable under the statute, if damages were recoverable. The statute does not undertake to change the common-law rule, except in those cases where the specific tortious act was done under direction of the city, or by its authority."

The statute properly construed would work justly. Take the case at bar as an illustration. Apparently it was held, first, that the city was negligent in failing to expeditiously repair the break in the main; second, that the pressure had to be reduced because the city had been negligent in allowing cut-off valves to become unworkable from rust and corrosion and lack of care; third, that the city water superintendent was negligent in refusing the request of the fire department to restore the pressure; fourth, that the city servant (appellant) employed in the street department caused the break in the main which created a condition of low pressure in the main at plaintiff's residence.

It is said by the lower court that the city is not liable, and such is the law of the case so far as the city is concerned. Under the court's holding, the servants of the city who had failed in any of the foregoing particulars might all be held to be concurrently liable.

It would be fair enough to hold them to be so, if a stranger to whom he or they owed a

duty suffers an injury from the acts committed outside of the scope of the servant's authority. But if committed within the scope of authority while about his master's business and under the direction of the master, the liability, if any, ought to attach to the master alone. I think this is the effect of the statute. I believe that the statute would be as applicable where the mode of doing a work was "under direction of the city or by its authority" where it is the mode of doing the work which is said to be the cause of the injury.

If it may be said to be a rule that the servant of a municipal corporation is liable for his negligence while acting under the control of and direction of the corporation even when the corporation is immune, it seems that this statute is designed to change the rule. It is proper to say that this statute is not invoked by appellant, yet I think it reflects the law as disclosed by some courts independent of statute, and possibly reflects the theory upon which plaintiff sought to attach liability to the defendant city of Roswell.

The case ought to have been decided by the lower court, and reviewed here, upon the issues presented, alone.

The lower court was not warranted in viewing the appellant as an independent contractor, if such was his view. The plaintiff ought not to be allowed to shift his position here and be heard to argue that appellant was an independent contractor. Plaintiff, in an effort to fix liability upon the city for the acts of its servant, clearly disclaimed the idea that the appellant was an independent contractor, and sought to place liability upon such appellant upon the basis of its contract promise to pay, and to indemnify the city.

Coming now to the question of proximate cause. As I view it, the failure of the city to supply water under pressure to extinguish the fire which consumed plaintiff's property was the efficient proximate cause of plaintiff's injury.

Back of this is the question as to whether the act of the city's servant, the appellant, was the proximate cause of the failure of the city to furnish the water or was it the failure of the city to interrupt the primary cause which is the real and proximate cause of the failure of the water supply?

The majority seem to assume that the breaking of the water main by appellant was the primary cause of the failure of the water supply, and this cause was the continuing one, and was not interrupted by the city's negligence in failing to make repairs, because such negligence of the city was "passive" instead of "active." Herein largely our difference of view as to efficient proximate cause as an element in the case.

While the passive character of the negligence has been mentioned in some decisions, it has not been considered as making any difference. It is well to keep in mind the difference between intervening causes which are not wrongful and those which are wrongful. The following is a statement in Cooley on Torts (2d Ed.) at page 76: "If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and

does actually result in injury through the intervention of other causes which are not wrongful, the injury will be referred to the wrongful cause, passing by those which are innocent, if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury will be imputed to the last wrong as the proximate cause, and not to that which is more remote."

Here we have the appreciation of a learned writer that there is no difference in contemplation of law between wrongs of commission or of omission with respect to their being legal or efficient causes for injuries. Beginning at section 489 of the Corpus Juris article on Negligence, is a discussion of "Intervening Efficient Causes." At section 496 is a consideration of "Failure to Interrupt Primary Cause." The text is as follows: "The mere omission of a third party to interrupt the result of defendant's act will not amount to an intervening cause, even though such third person is a fellow servant of the person injured, neither of whom were servants of defendant. But where after the negligent act a duty devolves on another person in reference to such act or condition, which such person fails to perform, such failure is the proximate cause of the injury resulting from the act."

In Clifford v. Atlantic Cotton Mills, 146 Mass. 47, 15 N. E. 84, 4 Am. St. Rep. 279, cited by Mr. Beals in "Selected Essays on the Law of Torts," post, the court held that the mere ownership of a house so constructed that its roof would throw snow into the street and

therefore threatening danger as it is without more, whenever it shall fall, is not enough to impose liability *when the control of it* has been given up to a lessee, who, if he does his duty, will keep it safe. I find that this case is cited by courts in several of the decisions cited in Corpus Juris to the foregoing text. I might also observe that Shepard in his Annotations shows that this decision has been often cited and has not been modified or overruled. I give Professor Beal's comment immediately before and after employing a quotation from this decision at 729 "Selected Essays on Torts":

"Of course, it is not contended that the earlier of two 'successive' wrongdoers would always be liable. On the contrary, in a large proportion of cases it would be found as matter of fact, and rightly found, that the earlier tort was not potentially operative at the time of committing the later tort (or, at all events, not so at the time of the damage) and that the later wrongdoer was the sole substantial human factor in bringing about the damaging result.

" 'There is no doubt that a man sometimes may be liable in tort, notwithstanding the fact that the damage was attributable in part to the concurrent or subsequent intervening misconduct of a third person. * * * But the general tendency has been to look no further back than the last wrongdoer, especially when he has complete and intelligent control of the consequences of the earlier wrongful act.' Holmes, J., in Clifford v. Atlantic Cotton Mills, 146 Mass. 47, 48, 49, 15 N. E. 84, 86, 87, 4 Am. St. Rep. 279 (1888).

"Moreover if the only fault sought to be imputed to the earlier conduct was that of negligence, it might be held that there was no negligence if it was improbable that the earlier conduct would tend to induce the commission of a subsequent tort."

In the cases supporting the text is to be noted the important factor of control of the object which may be potentially a cause of damage and of a condition which has been created by the primary wrongdoer.

It is very important to keep this in mind in the case at bar.

How can it be said that the wrongful act of the construction company is a continuing efficient cause of plaintiff's damage when the result of its act or the condition it created was not within its control so that it might break the continuation of a force or condition it had created so that it might not continue as a dangerous element of impulsion against a possible or probable on-coming force? The trial court found that the city took complete control of the repairs, and specifically that the construction company had no control thereof. The act of the construction company created a condition. This condition continued without its fault, but through the fault of the city.

I will refer to only a few of the cases cited to the Corpus Juris text.

Missouri, etc., R. Co. v. Merrill, 65 Kan. 436, 70 P. 358, 360, 59 L. R. A. 711, 93 Am. St. Rep. 287.

In the above-cited case, it was held that the railroad company which delivers a defective car to a connecting carrier is not liable for injuries sustained by an employer of the latter by reason of such defect after the receiving company has inspected the car and taken it in charge for transportation of its line. It was also held that the dereliction of the receiving company to make the inspection was the proximate cause of the hurt, and that the omission or negligent discharge of the duty of the receiving company breaks the causal connection between negligence of the company tendering the defective car and the plaintiff's injury, and that in such case the negligence of the company turning over the unsafe car is the remote cause of the plaintiff's injury.

"The failure to discharge the obligation to inspect interposes an independent agency, which severs the causal connection between the company first guilty of negligence and the hurt."

The court said: "Wharton, in his work on Negligence (§ 439), says: 'There must be causal connection between the negligence and the hurt; and such causal connection is interrupted by the interposition between the negligence and the hurt of any independent human agency. Thus, a contractor is employed by a city to build a bridge in a workmanlike manner, and after he has finished his work, and it has been accepted by the city, a traveler is hurt when passing over it by a defect caused by the contractor's negligence. Now, the contractor may be liable on his contract to the city for his negligence, but he is not liable to the traveler in an action on the case for damages. The reason sometimes given to sustain such a conclusion is that otherwise there would be no end to suits. But a better ground

is that there is no causal connection between the traveler's hurt and the contractor's negligence. The traveler reposed no confidence on the contractor, nor did the contractor accept any confidence from the traveler. The traveler, no doubt, reposed confidence on the city that it would have its bridges and highways in good order; but between the contractor and the traveler intervened the city, an independent responsible agent, breaking the causal connection.' "

This is one of the cases citing Clifford v. Atlantic Cotton Mills, supra.

In this case Chief Justice Doster concurred specially. He thought the failure of the receiving railroad company to inspect, or a careless inspection, was a simple failure to do a duty, an omission, not an affirmative act of wrongdoing, and further thought that the breaking of causal connection between a series of negligent acts could be accomplished only by the doing of something by somebody else which operates as a new and independent producing cause diverting the first negligent act from its nature and giving it a direction and force it did not otherwise have. He thought it not philosophical to speak of causal connection between act and consequence being broken by a mere failure, though a negligent one, of some person, not the original actor, to do something. He said: "Causal connection is broken only by the intervention of active agencies, not the occurrence of passive conditions and qualities."

I mention this as showing that the other eight justices of the Kansas Supreme Court were not impressed with the distinction Mr. Justice Doster endeavored to impress.

Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171, 173, is a very important case, I think, in our consideration, and very persuasive because, while many cited in the text have applied the same principle to a variety of situations, this case is very much like the case at bar on the facts. It gathers up a number of propositions and answers them in a manner opposed to the prevailing opinion in the case at bar. It appears that the village of Stephen was engaged in the business of distributing electrical energy. The defendant, Minnesota Electrical Distributing Company, supplied to the city electrical energy at a certain point, and the city thereafter distributed it. There was a defect in construction at the point of delivery which became accentuated by the action of the elements. The city suffered this condition to run along for over a year, and upon an occasion the current from a high-voltage wire came in contact with a distributing wire and a customer was injured. There was a judgment in favor of the plaintiff against the city, and also against the defendant company. On appeal, the judgment against the city was affirmed and the judgment against the defendant electrical supply company was reversed. The Supreme Court said that they were impressed by the argument that it was a question of fact whether the company was negligent, and that they were not inclined to say that the jury held wrong when they held the company guilty of negligence. They then say: "It does not follow, however, that the Company is liable, even though it was negligent in the manner indicat-

ed. That initial negligence was followed by the serious and wrongful inaction of the Village. Before the verdict against the Company can be sustained, we must resolve against it the question as to whether the negligence of the village was a new agency severing causal connection between the Company's negligence and plaintiff's hurt; or whether, on the other hand, such negligence simply concurred with that of the Company so as to charge both defendants."

The court went on to say that the contractor had a right to rely upon the owner assuming immediately upon his acceptance of the work the duty of inspection and maintenance, which confessedly was not performed. So in the case at bar, the construction company had a right to assume that the city would repair the main, and what is more important, the city did assume the duty of repairing the main and negligently performed the duty.

The following emphasizes the idea of the importance of control in applying the principle: "Not only was the Village in exclusive control, and, in consequence, the only agency upon which rested the burden of inspection and maintenance, but the Company was deprived, upon its delivery of the plant to the Village, of the opportunity and means of protecting the property from deterioration, and itself from resulting liability."

The court then propounds the following inquiry:

"How serious and long continued must such obvious neglect be in order to become an independent cause of injury? Is there no limit of time beyond which a contractor will cease to be liable, with the owner, for an injury which could not have happened but for the negligence of the latter?

"If the Company is liable in this case, there is no rule of law which would prevent the same result were the accident to occur ten years later. If, in the one case, the company's negligence be a proximate cause, it must be so in the other. If in the one situation the negligence of the Village be not an independent producing agency of injury, it cannot be in the other. We are dealing with a question of negligence, and cannot hold a defendant liable as an insurer. Musolf v. Duluth Edison Electric Company, supra [108 Minn. 369, 122 N. W. 499, 24 L. R. A. (N. S.) 451].

"Our examination of the problem and the authorities, in the light of which it must be solved, leads us to the conclusion, and we so hold, as a matter of law, that, under the circumstances of this case, the negligence of the Village was an independent producing agency of such character, that it broke the causal connection between the negligence of the company and plaintiff's injury, and thereby became the proximate cause of the latter.

"In a lucid and most helpful memorandum, the learned trial judge has considered this question. He was of the opinion that it was an open one in this state, and proceeds to dispose of it in this manner:

" 'If the negligence of the village had been active, I have no doubt it would have relieved the electric company from liability in this case, but, where the negligence of the village

was failure to do anything, and natural causes brought the wires together causing the accident, I am of opinion the defendants should be held concurrently liable.'

"We do not reach the same conclusion because we differ with the view that wrongful omissions are of less effect in law, and attended by less serious consequences, than positive wrongdoing. Action, where legal duty requires no action, is no worse than inaction where legal duty requires action. There is no difference in law or morals between the effects attending the two. Negligence more frequently accompanies omission than commission; but whatever its cause, its legal consequences are the same.

"Here, if, by the affirmative voluntary act of the Village, the situation had been rendered dangerous (for example, by the removal of the insulation from the wires), there could be no question that such act would have been the proximate cause. The removal of the insulation and the resulting electric contact are just as clearly attributable to the independent agency of the Village, when its non-action is the immediate cause of the damage."

Another important thing about this decision is, that upon the facts presented in the record, the court held: "As a matter of law, * * * the negligence of the Village was an independent producing agency of such character, that it broke the causal connection between the negligence of the company and plaintiff's injury, and thereby became the proximate cause of the latter."

I think while it is sometimes said, properly, that what is proximate cause is a question of fact where the facts are in dispute, it is a question of law where the facts are not in dispute. There is dispute in the case at bar as to the exact time when the broken main was finally and completely repaired. But there is no dispute as to the material facts to determine proximate or remote cause any more in our case than there was in the Minnesota case. It is undisputed that the main was broken at 10 in the forenoon, the city promptly notified thereof, the city assumed the duty of repairs, the court found upon evidence which I will not review, that it could have been repaired by noon by reasonable diligence, and that it was negligent in not having so repaired it, but that the city negligently suffered it to remain in an unsafe and inadequate condition from noon until about 6. There is no dispute as to these facts, and upon them we should say as to the Minnesota court that as a matter of law, under the circumstances, the negligence of the city was the independent producing agency of such a character that it broke the causal connection between the negligence of the construction company and plaintiff's injury, and thereby it became the proximate cause of the latter.

In Selected Essays on the Law of Torts, it is said that Dr. Wharton is an especial advocate of what is known as the "Last (or Nearest) Wrongdoer Rule," which is, in substance, as follows:

"The legal cause is the last (or nearest) culpable human actor to be found in the chain of antecedents; i. e., the one acting last before, or nearest to, the happening of the damage to plaintiff.

"This rule is sometimes propounded, not as a supplement to the rule of liability for probable consequences; but as furnishing, per se, a complete and all-sufficient doctrine of legal cause.

"Taking this rule literally, the test under it would be to trace back the links in the chain of antecedents, until we come to a wrongful act of a responsible human being; to the last or nearest wrongful act of a free human agent. The person doing that act is the legal cause."

In the case at bar, if we begin at the time of the need of the service by plaintiff (6 p. m.) we trace back and we find the last or nearest wrongful act (or omission) of a free human agent to be the negligent omission of the city which the court found to be a culpable actor.

Under the rule favored by Dr. Wharton, we would not look further. But if we should look further, we would then inquire whether the primary actor should have anticipated the city's wrongdoing.

It is to be assumed that every one will do his duty. One of these duties is to use care that his acts will not injure another. This assumption extends to the city as well as to the construction company. If the plaintiff bases his cause of action upon the assumption (as it does) that the construction company and the city would each do its duty, there is no reason to deprive the construction company of the shield of the assumption that the city would do its duty, and especially that it would not become a wrongdoer as the court found it to be.

In Missouri Pac. Ry. Co. v. Columbia, 65 Kan. 390, 69 P. 338, 340, 58 L. R. A. 399, the court said: "While one is responsible for such consequences of his fault as are natural and probable, and might, therefore, be foreseen by ordinary forecast, if his fault happened to concur with something extraordinary, and therefore not likely to be foreseen, he will not be answerable for the extraordinary result."

The court found that it took the city eight hours to do a 2-hour job. It must have been upon this that the court based the finding and conclusion that the city was negligent. In other words, the court would not have found the city negligent if its conduct was ordinary under the circumstances. It was because it was extraordinary that the court found it negligent. If, as the court found, the wrongful omission of the city was extraordinary, it was not a thing we can say was likely to be foreseen by the construction company.

From all of the foregoing, I conclude that the majority propose a decision which is unsound, and therefore I dissent.

On Motion for Rehearing.

WATSON, Justice.

The motion for rehearing is denied. We take advantage of the opportunity to add a word of explanation.

In concluding against the contention that the city's negligence broke the chain of causality leading to appellant's negligence so as to render the latter but the remote cause of the injury, we may have placed more emphasis than we intended upon the passive char-

acter of the city's negligence. We are aware of some situations in which nonaction is held to be an intervening cause.

The real basis of decision is that the city's negligence was not an independent cause. It was the primary fault, and it alone, that called for action on the part of the city. Its failure to act or to act in time was not a self-operating cause, and it was directly connected with the force previously set in motion.

The principle is quite different where a railroad company fails to perform its duty to inspect a car delivered to it for transportation, and an injury results from a defect which proper inspection would have discovered. There the passive negligence is independent of the original fault which occasioned the defect and serves as an intervening and the proximate cause. It is cases in this class upon which appellant has relied.

SADLER, C. J., and JOSEPH L. DAILEY, District Judge, concur.