JESS EDWARDS, Inc., a corporation,
Appellant,

v.

Cecelia GOERGEN and Norbert H.
Goergen, Appellees.

No. 5774.

United States Court of Appeals
Tenth Circuit.

June 9, 1958.

William W. Gilbert, Santa Fe, N. M.
(Carl H. Gilbert, L. C. White, and Sumner S. Koch and Gilbert, White & Gilbert, Santa Fe, N. M., of counsel, were with him on the brief), for appellant.

Wiley E. Mayne, Sioux City, Iowa (Earl T. Klay, Orange City, Iowa, and Irwin S. Moise, Albuquerque, N. M., and Shull, Marshall, Mayne, Marks & Vizintos, Sioux City, Iowa, of counsel, were with him on the brief), for appellees.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellee-plaintiff Cecelia Goergen was injured in an automobile accident that occurred when a car in which she was riding as a passenger was struck from behind by a truck driven by an employee of appellant-defendant, Jess Edwards, Inc. The car was knocked off a bridge into an arroyo fifteen feet below. Edwards admitted liability. After a jury trial on the sole issue of damages, Cecelia was awarded $82,500.00 and her husband, Norbert, was awarded $5,000.00 for loss of consortium.

Edwards contends that Cecelia's injuries were aggravated by negligent treatment which she received from her doctors and that the trial court errone-

ously instructed the jury as to the liability of Edwards for such injuries.

After the accident Cecelia had much trouble with her back. She consulted her family doctor, an orthopedist, and a neurosurgeon. All were experienced and competent physicians. As she did not respond to treatment a myelogram was performed about one year after the accident.[1] According to the testimony of her doctors this test showed "disc herniations in the thoracic eleven and lumbar five areas."[2] Plaintiff's doctors testified that this condition was directly attributable to the accident. An operation, known as a laminectomy, was performed on Cecelia's back at the T–11 and L–5 vertebral areas. At each point a herniated disc was found and removed. A bone fusion was performed at L–5 but not at T–11. Cecelia did not improve after the operation. Her doctors testified that there was permanent damage to the spinal cord in the T–11 region. The orthopedist summarized the situation thus:

"I think that at that time [the occurrence of the accident] she probably suffered some torn ligaments, and the supporting structure around the eleventh thoracic vertebra, around the eleventh thoracic disc, and I think over the number of months which followed, that loss of stability resulted in allowing the disc to press on the spinal cord at that region, and this repeated pressure resulted in damage to the spinal cord, and when we removed that pressure, that it was too late, that the damage had been done, and she just has not recovered."

A neurosurgeon testified for the defense as to his findings from a physical examination of Cecelia a few days before the trial and from his inspection of X-ray pictures. He stated that the myelogram showed a possibility of a herniated intervertebral disc at the T–11 interspace but did not indicate such a condition at L–5. He found an injury to the spinal cord in the lower thoracic region and said that he had no opinion as to whether the damage to the spinal cord occurred at the time of the operation. According to his examination there was no laminectomy performed at T–11 but there had been such an operation at T–10. He said if he had been plaintiff's doctor he would not have performed the operation.

The court instructed the jury, in part, as follows:

"A person causing an actionable injury is liable for the aggravation thereof by the negligence, if any, of a physician, surgeon or other medical specialist, if the person who is injured, uses reasonable care in the selection of such physician, surgeon or other medical specialist.

"You are further instructed that if an injured person exercises reasonable care to minimize the danger by selecting a physician, surgeon or other medical specialist, that person may recover damages to the full extent of the injury sustained, even though the physician, surgeon or medical specialist omits to use the most approved remedy or the best means of cure, or fails to exercise as high a degree of care or skill as any other physician, surgeon or other medical specialist might have exercised.

"Any act of negligence on the part of the medical specialist, physician or surgeon employed by the injured person, must be of the sort which is recognized as one of the risks which is inherent in the human fallibility of those who render such services."

Edwards contends that the foregoing instruction was erroneous and that the court should have instructed the jury that if it found any aggravation to Cecelia's injuries because of the assertedly

---

1. A myelogram is a diagnostic test to determine if there is pressure, irritation or deformity of the nerves of the spinal cord.

2. Hereinafter thoracic 11 will be referred to as T–11 and lumbar 5 as L–5.

improper treatment, defendant was not liable therefor as such a consequence was not foreseeable.

■ The general rule is that an injured party can recover from the original tort-feasor for the damages caused by the negligence of a physician in treating the injury which the tort-feasor caused, provided the injured party used reasonable care in selecting a doctor.[3] There is no New Mexico decision squarely in point. In Gilbert v. New Mexico Construction Co., 39 N.M. 216, 44 P.2d 489, 494, appears the following dictum:

> "* * * The negligence of physician, surgeon, or nurse may intervene to aggravate an injury or make it fatal. That will not sever the chain of casualty leading to him who made the treatment necessary."

■■ This dictum is a clear and unequivocal exposition of the law and must be followed unless it conflicts with other decisions of the New Mexico Supreme Court.[4] Counsel for Edwards, relying on the later decision of Valdez v. Gonzales, 50 N.M. 281, 176 P.2d 173, 177, urge that a tort-feasor is liable only for such consequences as were, or should have been, foreseen and that the negligence of a physician is not foreseeable. The tort involved in the Valdez case was "negligent language." Assuming that the foreseeability rule there announced is applicable to this personal injury case rather than the more generally recognized proximate cause rule, it is enough to say that the application of such foreseeability rule does not sustain the defendant's contentions. The negligence of defendant's employee caused the injuries which required the medical services.

Foreseeability applies only to the extent that the tort-feasor should have anticipated that his negligence would result in injuries requiring medical treatment. The tort-feasor must recognize the "risk involved in the human fallibility of physicians, surgeons, nurses and hospital staffs which is inherent in the necessity of seeking their services."[5] The instruction was proper.

■■ Edwards assert that the verdict award of $82,500 to Cecelia is excessive and obviously the result of passion and prejudice. Plaintiff received an injury to her spinal cord in the lower thoracic region. She has marked difficulty in walking and must use a cane. She has chronic residual pain in both legs and right hip, impairment of certain body functions, numbness in her feet, and 16% to 20% impairment of hearing. These conditions are permanent. One doctor testified that she had 25% to 30% loss of total body function. In addition to these permanent injuries she sustained a skull fracture and broken ribs. She has suffered and will continue to suffer pain and mental anguish. She has had to give up recreational and organizational activities in which she was formerly engaged. She is unable to care for her house and family or to assist in her husband's business as she formerly did. Her personality has undergone a decided change.

The action of a trial court in denying a motion for new trial on the ground that a verdict is excessive because of passion or prejudice is ordinarily not open to review on appeal except for abuse of discretion.[6] Cecelia received serious and permanent injuries. The case was properly tried. The record contains no in-

---

3. Harris v. Brian, 10 Cir., 255 F.2d 176; Restatement of the Law of Torts, Vol. II, § 457, p. 1214; 40 A.L.R.2d 1075; 126 A.L.R. 912.

4. Home Royalty Ass'n v. Stone, 10 Cir., 199 F.2d 650, 654.

5. Restatement of the Law of Torts, supra, p. 1215.

6. Franklin v. Shelton, 10 Cir., 250 F.2d 92, 99–100, certiorari denied 355 U.S. 959, 78 S.Ct. 544, 2 L.Ed.2d 533; E. L. Farmer & Co. v. Hooks, 10 Cir., 239 F.2d 547, 554, certiorari denied 353 U.S. 911, 77 S.Ct. 699, 1 L.Ed.2d 665; Chicago, Rock Island & Pacific Railway Co. v. Kifer, 10 Cir., 216 F.2d 753, 756, certiorari denied 348 U.S. 917, 75 S.Ct. 299, 99 L.Ed. 719.

dication that the jury was influenced by passion or prejudice. The trial court did not abuse its discretion in denying the motion for new trial.

The judgment is affirmed.